SARAH JANE McGEHEE et al., Appellants, v. FRANK GARRINGER, R. N. MOORE, et al.

SARAH JANE McGEHEE et al., Appellants, v. DENNIE GARRINGER et al.

In Banc, October 11, 1920.

1. **DEED AS MORTGAGE: Payment of Debt: Reinvestiture of Title.** Satisfaction of a mortgage reinvests the mortgagor with his original title; but where a deed absolute on its face is made to the creditor, and contains no defeasance, although made as security for a debt, payment of the debt does not reinvest the grantor with the title.

2. ———: **Conveyance by Grantee to Grantor's Wife: Recital.** William Garringer and wife conveyed land to Young by warranty deed. Four years later Young by quit-claim deed conveyed to Garringer's wife Nancy, reciting therein: "This land was conveyed to me to secure attorneys' fees due myself and John G. Wear, and William Garringer has paid said Wear the fees. The deed is absolute on its face, was intended between the parties as a mortgage." *Held*, that, the deed to Young being absolute on its face and expressing no defeasance, even if made to secure a debt, the payment of the debt did not reinvest the title in Garringer, but Garringer had an equitable interest which he could direct Young to convey to him or to some one else, and the deed to his wife Nancy conveyed the legal title to her; and if made to her by William's direction, or with his knowledge and consent, which is equivalent to direction, and nothing further appears, she took the absolute title, and did not hold it in trust for him.

3. ———: **Deed to Wife: Resulting Trust.** Where a deed absolute on its face is made as security for the payment of a debt due from the owner to the grantee, and, when the debt is paid, the grantee conveys to the grantor's wife, at his direction, or with his knowledge and consent, which is equivalent to direction, and nothing further

284 Mo.—30

appears, no resulting trust arises in his favor, for in such case the conveyance is a gift or sale to the wife; and if it was made to her for the purpose of avoiding the payment of his debts he and his heirs are without remedy.

Appeal from Greene Circuit Court.—*Hon. Guy D. Kirby*, Judge.

AFFIRMED.

*Arch L. Sims* and *John L. McNatt* for appellants.

(1) Parole evidence to vary, change, or explain the provisions of a deed is inadmissible. This is so even where there is such provision contained in a written contract, as the terms of the deed must determine the intent of the parties and the estate conveyed. Davidson v. Mauson, 146 Mo. 608. (2) Declarations of intention or of explanation of a grantor to a deed, either before or after its execution is inadmissible for any purpose. Kenny v. Muning, 170 Mo. 706; Collins v. Harrell, 219 Mo. 306. (3) A deed of land, absolute in form but intended by the parties merely as security for a debt being in legal effect a mortgage, a conveyance executed by the grantee therein to a third person who has notice of the defeasible nature of the original deed, operates as an assignment of the mortgage and of the debt secured and nothing more. 27 Cyc. 1293. (4) A person accepting a deed and claiming title through same is estopped to dispute the truthfulness of any of the recitals of said deed. Fox v. Windis, 127 Mo. 502; Hannibal, etc. v. Green, 68 Mo. 169; King v. Union Trust Co., 226 Mo. 351; Tyler v. Hall, 106 Mo. 313; Dickerson v. Anderson, 9 Mo. 156; Clamorgan v. Green, 32 Mo. 285; Patton v. Forgery, 171 Mo. App. 1; Curry v. Lafon, 133 Mo. App. 176; Durrette v. Briggs, 47 Mo. 356. (a) This principle of estoppel applies not only as to the parties to the deed but also to privies by inheritance or by deed. Hasmith v. Kerchoffer, 79 Mo. 241. (b) And such estoppels may be raised although

not pleaded in a reply. Brehan Bank v. Branch, 104 Mo. 425. (5) The defendants claiming under said quitclaim deed cannot dispute that the warranty deed was a mortgage. The court found same to be a mortgage. Neither can the defendants dispute that the debt secured by said mortgage had been paid, for same was so recited in said quitclaim deed. The payment of a mortgaged debt, *ipso facto,* relinquishes the interest the mortgagee has in said property. Gibbs v. Haughout, 207 Mo. 388; McNair v. Picotte, 33 Mo. 57; Collins v. Stocking, 98 Mo. 295; Bray v. Conrad, 101 Mo. 331. (6) A person conveying property in fraud of creditors, and all those claiming under him through said conveyance, will not be permitted in a court of law or equity to introduce such evidence of fraud. Over v. Howard, 11 Mo. 425; Thomas v. Thomas, 107 Mo. 464; Davidson v. Dockery, 179 Mo. 696. (7) The Statute of Limitations has no application in this case. Herndon v. Yates, 194 S. W. 46.

*Katherine Halterman* and *William B. Skinner* for respondents.

(1) A fraudulent conveyance is valid between the parties thereto, and as a general rule is only voidable as to creditors who by timely and proper proceedings acquire some specific lien on the property conveyed, prior to a *bona-fide* purchase thereof by a third party for value and without notice. Jacobs v. Smith, 89 Mo. 673. (2) A transfer of property made in fraud of creditors, while void as to them, is binding upon the parties thereto and those in privity with them. Whitaker v. Whitaker, 157 Mo. 353; Davidson v. Dockery, 179 Mo. 696. (3) Both parties must intend that a deed absolute on its face shall be treated as a mortgage to make it such. Duell v. Leslie, 207 Mo. 667. (4) A mortgagor (grantor) who abandons his right to redeem from an absolute conveyance and who elects to treat the conveyance as an absolute deed instead of a mortgage is

bound by such election and cannot afterwards redeem. He may also verbally waive his right of redemption in favor of another person and after a long acquiescence in the transaction, the other in the meantime having redeemed the land and improved it, he will not be allowed to redeem from him. In any event redemption must be made within the time allowed by the statute of limitations. 1 Jones on Mortgages (7 Ed.), par. 338; Tiedeman on Real Property (3 Ed.), par. 235; Scanlan v. Scanlan, 134 Ill. 630; Hutchinson v. Page, 246 Ill. 71; Adams v. Cooty, 60 Vt. 395; Deadman v. Yantis, 230 Ill. 243; McMillian v. Jewell, 85 Ala. 476; Cramer v. Wilson, 202 Ill. 83; Wamsley v. Crook, 3 Nebr. 344; Vennum v. Babcock, 13 Iowa, 194; Yaule v. Richards, 1 N. J. Eq. 534, 23 Am. Dec. 722; Shaw v. Walbridge, 33 Ohio St. 1; Woodworth v. Carmen, 43 Iowa, 504; Westfall v. Babcock, 16 Hun. (N. Y.) 541; Trull v. Skinner, 34 Mass. 215. (5) Where a deed is absolute in form and the equities of the grantor to have it held for security lie only in parol, the equities may be discharged by a subsequent parol agreement, which leaves the title absolute in accordance with the terms of the deed. Sevis v. Gilman, 199 Mass. 384; Scholl v. Hopper, 134 Ky. 83. (6) The activity of equity powers cannot be invoked where a party has negligently slept upon his rights and induced others to act upon the confident belief that he has abandoned them. Schradski v. Albright, 93 Mo. 42; Bobb v. Wolf, 148 Mo. 335. As between the original parties a recital in a deed, unnecessary to the conveyance, will not operate as an estoppel. Osborn v. Osborn, 6 Cal. 149; Devlin on Real Estate, paragraph 995.

BROWN, C.—The two actions entitled as above were brought to the May term, 1917, of the Lawrence County Circuit Court, by petition founded upon Section 2535, Revised Statutes 1909, to determine the title to about one hundred and twenty acres of land in that county. They were removed by change of venue to Greene County, where they were tried together as one

case upon the same evidence, involving the same issues. The judgment of the trial court was for the defendants. The plaintiffs appealed and both appeals are consolidated for hearing in this court.

The plaintiffs are children and heirs of William Garringer, claiming by inheritance from him. The defendants, claiming adversely to plaintiffs, rely upon a title derived through Nancy C. Garringer. The only issue in the case is whether, at the time of the death of William Garringer in 1901, Nancy C. Garringer, his wife, was already seized of the premises in her own right.

The common source of title is William Garringer, who owned the land and occupied it as a homestead for himself and family, consisting of his wife and their children. On August 15, 1874, he conveyed it by warranty deed to Henry C. Young for a recited consideration of $1,500, his wife Nancy joining in the deed. At that time he was very much concerned about his liability as surety on a note to the county for the benefit of the school fund, on which suit had been or was about to be instituted and on which a judgment was subsequently recovered. Young made a lease of the same land to Garringer without date, but expiring on September 3, 1876, for the consideration of $100 payable on that date, and signed by both parties.

On March 7, 1878, Young executed a quitclaim deed whereby he remised, released and quit-claimed the same land to Nancy C. Garringer. Following the description are the following words: "The land was conveyed to me the 15th day of August, 1874, to secure attorneys' fees due myself and John G. Wear, and William Garringer has paid said Wear the fees. The deed is absolute on its face, was intended between the parties as a mortgage." This deed was filed for record November 30, 1883.

There was testimony strongly tending to show that Mr. Garringer at the time of these transactions stated

that he had put this property out of his hands for the purpose of protecting it against the surety debt.

Mrs. Garringer continued to occupy the land as her homestead after her husband's death until her own death in 1917. Under the stipulation for the consolidation of these cases the findings and judgment of the court are copied in the appellants' abstract of the record in number 20,895, which involves the title adjudged to be in Moore. It is agreed, however, that Number 20897, in which the title was adjudged to Dennie Garringer, involves precisely the same questions. The judgment and findings in the Moore case are as follows:

"The court finds that William Garringer, Sr., through whom plaintiffs and certain defendants claim title by inheritance, at the time of his death had no title to the real estate described in plaintiffs' petition, to-wit: The Southwest Quarter of the Southwest Quarter of Section Eleven, Township Twenty-eight, Range Twenty-six, in Lawrence County, Missouri, except two acres in form of a square in the southeast corner thereof. The court finds that on the 15th day of August, 1874, the said William Garringer and his wife, Nancy C. Garringer, by their deed recorded in Book R, page 5, and Book 106, page 594, in the Recorder's office in Lawrence County, Missouri, conveyed the above described real estate to Henry C. Young, to secure attorney's fees due to said Young and one John G. Wear, and that thereafter the said Henry C. Young, to-wit, March 7th A. D. 1878, by his deed recorded in Book Y. page 523, in the Recorder's office in Lawrence County, Missouri, and at the instance and request of said William Garringer, Sr., conveyed the said land to Nancy C. Garringer, and she became vested with the title thereto; the court further finds that the wife of Henry C. Young, who failed to join with him in said deed, was dead at the commencement of this action, and the court further finds that after the death of William Garringer, Sr., the said Nancy C. Garringer by her deed conveyed said land to Frank Garringer, who there-

after conveyed the same to Fred Moore, who thereafter conveyed the same to John G. Ruckert, who in turn conveyed the same to the defendant, R. N. Moore, as pleaded and set out in the separate answer herein of said defendant, R. N. Moore. It is therefore considered, ascertained, determined and adjudged by the court that the defendant, R. N. Moore, is the owner in fee of, in and to the said Southwest Quarter of the Southwest Quarter of Section Eleven, Township Twenty-eight, Range Twenty-six, except two acres in form of a square in the southeast corner thereof, and that neither of the plaintiffs, nor the other defendants, nor any of them, have any right or title thereto, and that the defendant R. N. Moore, have and recover of and from the plaintiffs his costs in this behalf laid out and expended.''

I. This title depends entirely upon the effect of the following recital in the quitclaim deed of Henry C. Young to Nancy C. Garringer: ''This land was conveyed to me the 15th day of August, 1874, to secure attorneys' fees due myself and John G. Wear,

**Deed. Recital in**

and William Garringer has paid said Wear the fees. The deed is absolute on its face, was intended between the parties as a mortgage.'' All courses of reasoning by which we may follow the transaction in which the land was, in 1874, conveyed by William Garringer, the common source, to Henry C. Young, lead unerringly to this point. It was transferred to Young by warranty deed with all the usual covenants of title and seizin, and would still remain with him, but for the quitclaim deed which is the parting of the ways, one of which leads to the reinvestiture of the grantor, as plaintiffs contend, and the other to the vesting of the title in Nancy C. Garringer, under whom the respective defendants claim.

Much has been said in argument to the effect that the evidence shows that the warranty deed to Young was made in pursuance of a plan of the grantor to defraud the school fund of which he was a debtor, and that

neither he nor his heirs can take advantage of this ulterior purpose to defeat the operation of the deed according to its terms. While that is true, it is also true that the plaintiffs are relying on the very deed from Young through which the defendants deraign their title   This brings us back to the question whether the quitclaim deed is a release inuring to William, or a conveyance to Nancy. But while the fraud is not available to the plaintiffs to annul the transaction, it may throw light on the meaning of the subsequent acts of the parties. This is not inconsistent with the finding of the court that a purpose of the deed was to secure an attorneys' fee due from Garringer to Young and Wear, as recited in the deed under which the defendants claim. That, eliminating this recital, that deed is sufficient to invest the grantee with the legal title conveyed to Young in 1874, is not questioned.

II.   The rule is that the satisfaction of a mortgage reinvests the mortgagor with his original title. This is not the case where the deed, although made as security for a debt, is absolute on its face, containing no defeasance. In such case the grantee, instead of holding a mere security, holds the legal title to the land, and the record of his deed is notice to all the world of absolute ownership. It requires no further assurance to complete his title. The interest of the grantor is only an equity, enforcible as such notwithstanding the statute requiring conveyances of such interests to be in writing. If the grantor holds a written defeasance, its mere surrender, for that purpose, releases the land from the equitable incumbrance. [Jones on Mortgages (7 Ed.), sec. 338; Trull v. Skinner, 34 Mass. 1. c. 215; Vennum v. Babcock, 13 Iowa, 194.] So in all cases where the right to redeem rests simply in parol it may be waived by words or acts clearly indicating that purpose on the part of the grantor, in the absence of any circumstance of unfairness or oppression on the part of the grantee.   [Hutchison v.

*Reinvestiture.*

.Page, 246 Ill. 71; Cramer v. Wilson, 202 Ill. 83; Deadman v. Yantis, 230 Ill. 243; Scanlan v. Scanlan, 134 Ill. 630; Shaw v. Walbridge, 33 Ohio, 1; Wamsley v. Crook, 3 Neb. 344.]

In this case, Young, having an absolute title to the land by virtue of his warranty deed from William Garringer, executed the quitclaim deed to Mrs. Garringer. But for the recital to which we have referred this was sufficient to revest the title in her. The plaintiffs deny that it had this effect, because that deed shows, upon its face, that the deed under which Young held was in fact a mortgage shown by recital in his quitclaim deed to have been satisfied; that its satisfaction extinguished the title of Young, which reverted to his grantor under whom the plaintiffs claim by inheritance and that Young and his grantee, as well as the defendants claiming under them, are bound by this recital, which constitutes a part of defendants' title and estops them from claiming through the deed to Young.

This legal proposition is true in the class of cases to which it is applicable; that is to say, of conveyances purporting upon their face to be made as security, and containing a defeasance which' divests the legal title conveyed upon the performance of the condition to which it is subject. No reconveyance is necessary, because the legal title reverts to the grantor by the terms of the instrument which conveyed it. In practice no one can be deceived by its operation.

There is no foundation for such rule in this case. The Statute of Frauds, out of consideration for the stability of titles, requires the transfer of interests in lands to be in writing, but has made an exception to this rule in case of resulting trusts which are cognizable only in equity, which is, in this State at least, notwithstanding the code, a separate jurisdiction for the enforcement of equitable rights as distinguished from legal titles.

The courts of this country, where not prohibited by statute, have applied the principles relating to resulting trusts to conveyances of this character, by permitting it

to be shown that a deed absolute on its face was made as security for a debt. This right is purely equitable, recognized and enforcible in courts having equitable jurisdiction. The title of the grantee in such a case is perfect at law. [Jones on Mortgages (7 Ed.), sec. 282.] Its establishment as against the legal title requires the same certainty of proof applicable to other cases of that character. In such cases the grantor must come into the court of equity with clean hands and he and those in privity with him, as his heirs, will be denied relief, even in cases where the conveyance was made to secure an honest debt, if an ulterior object of putting the security in that form was to defraud other creditors. [Id. sec. 283.]

The rule of privity which charges innocent heirs with the fraud of their ancestor by refusing them relief in such cases, does not apply to the widow. Her inchoate interest in the lands of her husband attaches by virtue of the marriage relation during his lifetime, ripening to a possessory interest upon his death, and equity will grant her the same measure of protection as if she were a stranger. [Kitts v. Wilson, 130 Ind. 492.]

With these well settled principles in mind we will examine the quitclaim deed of Young to Mrs. Garringer, which is admitted to be in all respects sufficient to invest her with all the title Young had or might convey. It recites a paid consideration of $200 to Young. How this was paid by Mrs. Garringer is not stated and does not appear. The troublesome recital states that the warranty deed under which Young claimed was made to secure the payment of fees to himself and Wear, and that the fees had been paid to Wear by Garringer, his grantor. A fair construction of these two recitals seems to be that, while the warranty deed was made to secure attorneys' fees both to himself and to Wear, the fees due the latter had been already paid by Garringer, and that the $200 was the amount of fees due to himself. This is much more reasonable, as well as more creditable to Mr.

Young, than the theory that, having received full payment of the amount of the debts, he was still exacting $200 for doing what equity required him to do without compensation. However this may be, the entire sum was paid, and, if the title of Young was a mere security, he still held the legal title which equity required him to return to Garringer or to another at the latter's direction. Had he refused a court of equity would have accomplished it for him. Had Garringer sold or transferred his equity the transferee would have been entitled to the conveyance. Had he borrowed the money to pay his debt he might have had the same security transferred by Young to the lender. Instead of doing any of these things he transferred his legal title to one of his grantors, who had the right, in equity, to demand it.

The fact that the payment of the debt was prerequisite to the duty of Young to reconvey demonstrates the fallacy of the contention that its recital in the quitclaim deed destroys the effect of that instrument. The unquestioned right of Garringer to transfer his equity in the lands demonstrates the right of the holder of the legal title to convey it as he should direct. The transfer might be effected by sale or gift according to the pleasure of the owner, and his heirs would be bound by the disposition. That the legal title passed to Mrs. Garringer by the Young deed without regard to the manner in which the consideration was recited is equally evident.

III. The legal title having been vested in Mrs. Garringer when she made the conveyances under which the defendants Moore and Dennie Garringer claim, the only question is whether she held it in trust for her husband. If it was conveyed to her by his direction, or with his knowledge and consent, which is equivalent to such direction, and nothing further appears, then no trust resulted to him from the act. In such case it would be a gift or sale as the case might be. We think that his reason for

causing this deed to be made to his wife instead of to himself appears plainly in the testimony. It was the same reason that induced him to make the warranty deed to Young for the fictitious consideration recited in the instrument, but really to secure the payment of an attorneys' fee. He desired in that way to prevent the sacrifice of the property by sale in satisfaction of the debt for which he was surety. Nothing was more natural than that he should grow fearful that this repository of the title might become unsafe by death or other contingency, and that he should select his wife to take the place of his friend and attorney. In such case, as we have seen, he and his heirs would be without remedy.

That he knew of the conveyance is certain, for he permitted twenty-three years to elapse between its execution and his death without any indication of dissatisfaction with the situation. During eighteen years of this time the deed had been spread upon the land records of the county. The theory that during all this time he had rested serenely in the belief that his friend Young was the owner of his farm is too grotesque for consideration. At the time of his death the Statute of Limitations had run against any claim he might make with respect to the title, and the record shows that the defendant claimants are still in possession under the same old deed. Under these circumstances we can see no error in the finding of the court that the deed from Young to Mrs. Garringer had been made by direction of William Garringer.

It follows that the judgment of the Circuit Court for Greene County should be and it is affirmed. *Ragland* and *Small, CC.,* not sitting.

PER CURIAM:—The foregoing opinion of BROWN, C., is adopted as the opinion of the court. All of the judges concur, except *Woodson, J.,* absent.