**VAUGHAN v. KIESLING et al.**
**No. 11154.**

Court of Civil Appeals of Texas. Galveston.

April 17, 1941.

Rehearing Denied May 8, 1941.

T. B. Blanchard and Ernest H. Folk, both of Houston, for appellant.

Vinson, Elkins, Weems & Francis, W. A. Vinson, Wharton Weems, and Fred R. Switzer, all of Houston, for appellees.

MONTEITH, Chief Justice.

This action was brought by appellant, F. W. Vaughan, to recover a one-third interest in a tract of 431.12 acres of land known as Lot 6 of the north half of the Thomas Choate League in Harris County, from appellees, A. E. Kiesling and T. K. Dixon, and for an accounting and for the removal of a cloud from the title to his claimed interest in said land.

Appellant alleged that he, together with appellees, Kiesling and Dixon, had purchased the land in question jointly from one T. J. Collins by deed dated March 7, 1910, for a consideration of $16,246.00, $4,311.50 of which had been paid in cash, one-third by each of them, and the execution and delivery of three promissory notes for the sum of $4,311.50 each, of even date with deed and due on respectively one, two and three years after date; that he left the United States shortly after the purchase of said land and had since that time resided in foreign countries; that he had never parted with his interest in said land and had not heard of any one else asserting any character of claim thereto until August, 1937, when he learned for the first time that appellees were claiming the title to his interest in said land through an execution sale under a foreclosure suit brought by T. J. Collins against him and appellees wherein judgment had been rendered in favor of T. J. Collins on December 23, 1911.

Appellant alleged that, at the time of such foreclosure and sale, he and appellees were cotenants and that, therefore, their purchase of said land inured to his benefit as well as to the benefit of appellees. He alleged that the default in the payment of said vendors' lien notes was part of a fraudulent scheme by appellees to acquire his interest in said land; that when he learned of such foreclosure and sale he had offered to pay appellees one-third of the sum they had paid therefor, plus interest thereon, but, that they had refused to accept such offer.

Appellees answered by general demurrer, general denial and a plea of not guilty. They specially plead the three, five, and ten year statutes of limitation and the two and four year statutes of limitation to appellant's suit to redeem.

In answer to special issues submitted, the jury found in effect that the foreclosure suit brought by T. J. Collins and the judicial sale thereunder were part of a fraudulent scheme by appellees to acquire appellant's interest in said land; that appellant had first learned of said

foreclosure suit and sale in August, 1937; that he had not abandoned the purchase of said land and that he had offered to pay appellees his part of the money so expended by them, within a reasonable time after he had learned of their adverse claim to the land; that by the use of ordinary care appellant should have discovered that appellees had purchased the land in question at said foreclosure sale in September, 1922; that appellees had held peaceable and adverse possession of said land under title or color of title for three years before the commencement of the suit, and that they had held peaceable and adverse possession thereof, cultivating, using and enjoying it, and had paid taxes thereon under a duly registered deed for five years before the suit was filed.

Judgment was rendered against appellant and in favor of appellees for the title to and possession of the land sued for.

The record shows that appellant left Houston on August 11, 1911, and that he has lived in Central America for a number of years under an assumed name; that on October 25, 1911, eight felony indictments were returned against him, but that they were dismissed on September 23, 1922, at which time he had returned to Houston and had remained there for a period of three months; that at the time he returned to Houston in 1922 he did not call on either of appellees and did not visit said land or make inquiry as to its status, or pay taxes on it; that he did not pay, or offer to pay, T. J. Collins any part of either the principal or interest of the notes given as part of the purchase price for said land after he left Houston, and had never, up to 1938, when he learned through Houston newspapers of oil activity in the neighborhood of said land, offered to pay appellees any part of the money they were required to pay for said land at said foreclosure sale.

On August 22, 1911, one J. W. Hicks filed suit against appellant to recover the sum of $674.63. He caused an attachment to be levied on appellant's interest in the land involved in this suit. On August 29, 1911, H. L. Mitchell filed suit against appellant to recover the sum of $2,275. He also caused an attachment to be levied on appellant's interest in said land. On September 8, 1911, T. J. Collins filed suit against appellant and appellees, Kiesling and Dixon, to foreclose his vendors' lien on said land and against H. L. Mitchell and J. W. Hicks, as holders of attach-

ment liens against the land. At the time said foreclosure suit was filed appellees had paid $2,874.33 on the principal of the note due on March 7, 1911, and had paid all interest then due on notes 2 and 3. Out of the proceeds of said foreclosure sale the sum of $1,227.43 was paid into the registry of the court. It was later paid to H. L. Mitchell in settlement of the attachment liens in favor of Mitchell and J. W. Hicks.

Appellant contends that neither laches nor limitation begin to run against a cotenant out of possession until actual notice, both of their acquisition of his interest in said land by his cotenants and of their adverse claim thereto, have been brought home to him and that, since the jury in answer to issues submitted found that he had no knowledge of such foreclosure or sale or of appellees' adverse claim to said land until August, 1937, neither laches nor limitation began to run in their favor until that date.

While it is the general rule in this state that the purchase by one cotenant of an outstanding title in the common property inures to the benefit of his cotenant, it has been uniformly held that there is nothing in the relation which forbids one cotenant from acquiring the share of his cotenants at a foreclosure sale of the common property for the joint debt of all the cotenants where it is shown that the sale was not the result of collusion or subject to the control of the purchaser. and where the property sells at a fair price, since a cotenant is under no legal or moral obligation to protect the other owners in their individual enjoyment of their estates in the common property. He is only required to act in good faith toward them. 11 Tex.Jur. 470.

Further, while equity does not deny to a cotenant the right to purchase an outstanding or adverse claim on the common property, although it will not permit him to acquire such title solely for his own benefit or to the absolute exclusion of the others, it, at the same time, exacts from his cotenants the exercise of reasonable diligence in making their election to participate in the benefit of the new acquisition. It will not permit them to equivocate or trifle with the possession thus afforded him, or make it the means of speculation for themselves by delaying, until a rise in the price of the land, or some other event shall determine their

438

course. They must make their election to participate within a reasonable time, and contribute or offer to contribute their ratio of the consideration actually paid, or they will be deemed to have repudiated the transaction and abandoned the benefits thereof. Myers v. Crenshaw et al., Tex. Civ.App., 116 S.W.2d 1125, affirmed 134 Tex. 500, 137 S.W.2d 7; 54 A.L.R. 880, 910; Magruder v. Johnston, Tex.Civ.App., 233 S.W. 665; Niday v. Cochran, 42 Tex. Civ.App. 292, 93 S.W. 1027; Johnston v. Johnston, Tex.Civ.App., 204 S.W. 469; Thompson v. Robinson, 93 Tex. 165, 54 S.W. 243, 77 Am.St.Rep. 843; Williams v. Cook, Tex.Civ.App., 272 S.W. 809.

It is further held that the doctrine of laches is, not like limitation, a mere matter of time, but that it is principally a question of the equity of permitting a claim to be enforced which is based on some change in the condition or relations of the property or the parties (Brady v. Garrett, Tex.Civ.App., 66 S.W.2d 502), and that being an equitable right, such as appellant's demand in the instant case, it will become a stale demand after ten years have elapsed from such time as a party has learned, or could have learned by the exercise of reasonable diligence, of his rights therein and of the adverse claims asserted thereto. Huffington v. Doughtie et al., Tex.Civ.App., 113 S.W.2d 343; Campbell v. Houchin, Tex.Civ.App., 35 S. W. 753; Montgomery v. Noyes, 73 Tex. 203, 204, 11 S.W. 138.

While in the instant case the jury found that the foreclosure suit brought by T. J. Collins and the judicial sale made thereunder were part of a fraudulent scheme by appellees to acquire appellant's interest in the land in question, it further found that appellant could, by the use of reasonable diligence, have learned in September, 1922, that said judgment of foreclosure had been entered in December, 1911, and that appellees had become the purchaser of said land at execution sale in February, 1912. This suit was filed in February, 1940, after appellant had learned that oil had been discovered in the neighborhood of said land. It is to be presumed that said land was purchased by appellees at a fair price since appellant and appellees purchased said land from T. J. Collins for the sum of $16,246. It was sold under execution to appellees Kiesling and Dixon for the sum of $18,700. Of this sum $1,227.43 was paid to H. L. Mitchell in part

settlement of the attachment liens levied on appellant's interest in said land by Mitchell and J. W. Hicks. It is uncontroverted that appellant returned to Houston in 1922 and that he remained there for a period of three months; that he made no investigation as to the status of said land and that he did not pay and had not offered to pay any part of the deferred payments due on the purchase price therefor from the time he left Houston in 1911 until he learned of the discovery of oil thereon in 1938.

Under the above facts, appellant, having failed to make tender of contribution to appellees within a reasonable time after he could have learned of such sale, his right to recover any interest in said land is barred by laches.

Appellant's contention that limitation does not run in favor of cotenants in possession until actual notice, both of the acquisition of his interest in the land by said cotenants, and of their adverse claim, thereto, has been brought home to the cotenant out of possession, cannot be sustained.

In the recent case of Mauritz v. Thatcher, 140 S.W.2d 303, 304, in which a writ of error was refused by the Supreme Court, this court, in discussing a question similar in practically all respects to that presented in this appeal, said:

"The jury having found on what we deem to be sufficient evidence that the two lots in controversy had been continuously claimed, used and occupied by appellee, either in person or through tenants, for a period of ten years prior to the filing of this suit, the question then to be determined in this appeal is whether the acts of appellee, in his assertion of his claim to said two lots, were sufficiently open, notorious and inconsistent with the title of the then owners thereof, under all of the circumstances in the case, to raise the inference of notice to the record owners that his claim thereto was hostile to their interest or from which the jury might rightfully presume such notice. * * *

"Limitation upon an adverse possession in a case of this kind begins to run from the time of such notice of a termination of tenancy. It is not necessary, however, that actual notice of an adverse holding and disseizin be given to a co-tenant or owner. Such notice may be constructive and will be presumed to have been brought home to the co-tenant or owner when the adverse

occupancy and claim of title to the property is so long-continued, open, notorious, exclusive and inconsistent with the existence of title in others, except the occupant, that the law will raise the inference of notice to the co-tenant or owner out of possession, or from which a jury might rightfully presume such notice. It is held that reputation of the claim of a co-tenant and notice thereof may be shown by circumstances and that a jury may infer such facts from long continued possession of the land under claim of ownership and non-assertion of claim by the owners. Moore et al. v. Knight et al., 127 Tex. 610, 94 S.W.2d 1137; Illg v. Garcia, 92 Tex. 251, 47 S.W. 717; Rae v. Baker, Tex.Civ. App., 38 S.W.2d 366; Williams v. Pure Oil Co., Tex.Civ.App., 49 S.W.2d 846.

"Since the jury and the trial judge have, upon sufficient evidence, resolved not only the issue as to appellee's claim, use and occupancy of the two lots in question for the statutory period of time, but have resolved the issue as to the sufficiency of the notice of his claim of ownership thereof to the record owners, regardless of whether we would have decided these issues in the same manner, the trial court's findings on said issues are conclusive and binding on this court, and appellants' contentions in this respect must be overruled."

In the late case of Brown v. Phillips Petroleum Company, Tex.Civ.App., 144 S. W.2d 358, it was held that actual notice to a cotenant out of possession is not necessary and that a claim to the fee to the land, evidenced by the execution by the tenant in possession and her husband of an oil and gas lease, duly recorded in the county where the land was situated, was sufficient to set in motion the statute of limitation.

In the case of Houston Oil Company of Texas v. Davis, Tex.Civ.App., 181 S.W. 851, 853, it was held that: "If a tenant in common takes adverse possession of all the land and claims it as his own, it is for the jury to determine, under all of the facts as to whether he has matured his title under the statute of limitation." (Cases cited.)

The jury in this case, as in the Mauritz case, having, upon sufficient evidence, resolved not only the questions of the occupancy and use of said land by appellees, for the statutory periods of time, but the question as to the sufficiency of notice of the claim of ownership thereof

by appellees, this court is bound by such findings and appellant's contention in this respect must be overruled.

Further discussion is deemed unnecessary since these conclusions determine the merits of the appeal. They require an affirmance of the trial court's judgment.

It is so ordered.

Affirmed.