GATLIN et al. v. SOUTHWESTERN SET-
TLEMENT & DEVELOPMENT COR-
PORATION et al.

No. 4057.

Court of Civil Appeals of Texas. Beaumont.
Nov. 18, 1942.

Rehearing Denied Dec. 2, 1942.

E. A. Lindsey, of Newton, and A. M. Huffman, of Beaumont, for appellants.

T. J. Arnold, Sam R. Fisher, Sears, Blades, Moore & Kennerly, and Fountain, Cox & Sandlin, all of Houston, and J. B. Forse, of Newton, for appellees.

WALKER, Chief Justice.

This is an action in trespass to try title by appellants, Matilda Gatlin et al., claiming under Felix and Celia Samuel, husband and wife, former slaves of Judge D. R. Wingate, against appellees, Southwestern Settlement & Development Corporation et al., holding the record title under Judge Wingate, to recover the title and possession of 160 acres of land described by metes and bounds, out of the north one-half of the D. S. D. Moore league of land in Newton county; in the alternative, to recover an undivided 160 acres of land including their possessions; and in the second alternative to recover their actual improvements consisting of a tract of land of 18.81 acres. Appellants claimed the land under the statute of ten years' limitation. One theory of appellees' defense was that the original entry of Felix and Celia Samuel on the land in controversy was under permission of Judge Wingate, and that their possession never became hostile. Appellants' plea of limitation was submitted to the jury and found in their favor, but judgment was for appellees notwithstanding the verdict, from which appellants have regularly prosecuted their appeal.

The first point of error is that the court erred in entering judgment for appellees notwithstanding the verdict of the jury. The law of this assignment was thus stated by the court in Happ v. Happ, Tex. Civ.App., 160 S.W.2d 227, 229: "A judgment non obstante veredicto is only authorized in cases in which an instructed verdict would have been proper, or when a special issue finding has no support in the evidence."

It is our conclusion, on the undisputed evidence, that the original entry of Felix and Celia Samuel was by permission of Judge Wingate, and that, if their possession ever became hostile, notice of their repudiation of their right of entry was never brought home to Judge Wingate. The following statement of the evidence supports this conclusion.

Felix and Celia Samuel entered on the land in 1874, and lived on it continuously until Felix's death in 1893, cultivating, using and enjoying it during every year of their occupancy. Felix died in 1893 and Celia continued living on the land for about two years after his death, when she married a second time and moved off the land onto land claimed by her husband, and nev-

er returned to it and never subsequently asserted any claim to it. One witness gave the following testimony as to the claim of the land by Felix: "As to what old man Felix said about claiming that place, when we were walking across the farm looking after his farm, he looked over on the outside of his field and he says 'I am going to clear up a site of that land outside. I have not got nothing like what I want.' He had a fine lot of stuff there growing and he was telling me what he was going to do with the balance of it. That is the balance of the land. That was along in the summer time like. He had been there then about a year or more. He had a pretty good farm cleared up there within the fence around there. I suppose he had 15 or 20 acres. The land he pointed out that he was going to clear up more of was outside of the field. It was west of the field. He said he was claiming 160 acres. I never heard him talk about it more than once." A witness gave the following testimony of the claim of the land by Celia: "After old man Felix died I was over at the place while Celia lived there. I heard her say she was claiming the property. She said the same thing that old man said. She said she was claiming 160 acres of land and said it was her place, is all I know."

As against this testimony, the judgment non obstante veredicto can have support only if the evidence, as a matter of law, established the fact that the entry of Felix and Celia on the land was permissive, and that notice of their hostile claim was never brought home to Judge Wingate.

We now give the testimony on the theory of permissive entry. Richard Farr testified (Q. & A. reduced to narrative): "I knew Judge D. R. Wingate. I knew an old colored man by the name of Felix Samuel; uncle Felix and I lived as neighbors for a while. I heard a conversation between my father and Felix about the place Felix lived on on the Moore league. Felix settled on the place in '74. I heard old man Felix tell my father that Judge Wingate put him out there on that place; that he built out there under Judge Wingate's orders and authority. Well, that is all I know, that they had the conversation. They used to be neighbors. After he built out there, we didn't live over a mile apart. And we lived on the Wilse McMahon place in '74, and they lived out there where old man Felix died. I played with his boy, his oldest boy, John Samuel,

and Ella Lewis and Jim Lewis was boys under me. We used to meet up there and go to mill together. Whiteman's mill, and we would often be together out there. And my father and old man Felix would often get together and use these conversations; yes, sir. Judge Wingate gave Felix authority to build there, go out there and make them a little house in that day and time. They would always go—he put those colored people out there on these lands. In 1874, as I told you a while ago, I lived about a mile east of Felix's settlement. At that time I was about twelve years old. When I was about twelve years old I heard my father and old man Felix talking about how Felix come to settle out there. That conversation took place out there after he settled there."

John Rutherford testified as follows: "My people moved here in '79. I was acquainted with an old negro that used to live in the southern part of this county by the name of Felix Samuel. I know where he lived. I heard him say how come him to make a place there. He told my father that Judge Wingate told him to go out there. That statement was made in my hearing. I was a kid, I suppose about six years old, something like six years old. I have remembered that conversation down through the years. I remember things that happened before that; I remember things as we come through from Louisiana. Old man Felix worked for my father that summer."

George Fuller testified by deposition (Q. & A. reduced to narrative): "I am 86 years and 5 months old; I was born on the 28th day of September, 1855. I have lived in Newton County since 1858. I have worked for Mr. Kirby. I know the Moore league of land in Newton county, Texas. I have been all over and around it and run the lines. I have been to a farm on the Moore league that was occupied by a negro woman named Celia Samuel. Well, Mr. Kirby sent me some leases, and I told him some folks were living on his land, and he sent me some leases, all filled out, and I went and seen that negro woman and I told her what I come there for and she said, 'I have been here a long time. Mr. Wingate put us here, and I don't know what to do about it. I would like to talk to Mr. Wilson.' Her name was Celia. I said, 'Go see Mr. Wilson.' He was a notary public and had a little mercantile business and warehouse. And she said, 'I will

do it. That is the only white man I have got to look after it.' And she went down there, and I went on down there and she was there with Mr. Wilson, and she asked Mr. Wilson what to do about it, and he said, 'You have never paid no taxes and if I was you I would sign it, and you said George will give you everything that is on it, the house and everything, if you go move and get on your own property.' Celia Samuel signed up the lease agreement but I don't remember now whether old man Henry Wilson, the notary public, put his seal on it. Celia signed the lease by her mark. After Celia signed the lease I rented her the place and she stayed there and made a crop and I went back and collected the rent. That was the next year after I winded up that lease of tenancy. I don't remember the date of it at all. Celia told me old Judge Wingate put them there; told them to go get on it and they would have a home. I asked her if she had been paying taxes and she said no; Judge Wingate said he would keep up the taxes."

After Celia moved off the place one of the Samuel boys moved on it under a tenancy contract with the record owner. Judge Wingate's two sons cut the timber off the Moore league; cut around the Felix Samuel place; this timber was sent down the river to Judge Wingate's mill. The timber was cut from all the land claimed by appellants in this suit except the 18.81 acres under fence. There was no testimony to the effect that the original entry of Felix and Celia was hostile except as that fact might be inferred from their possession and use of the land, and the statements testified to by certain witnesses that they were claiming the land. However, the uncontradicted evidence by the three witnesses, Farr, Rutherford and Fuller, was to the effect that both Felix and Celia admitted that their original entry was by permission of Judge Wingate, and there was no circumstance in evidence sufficient to visit Judge Wingate with notice that the peaceful entry had become hostile. Appellants did not claim through deeds but only through the possession of Felix and Celia; through all the years they paid no taxes on the land; they permitted the record owner to cut the timber; after the death of Felix and the second marriage of Celia, they abandoned their possession. The evidence as summarized supports the court's judgment in entering judgment non obstante veredicto.

Appellants cite as supporting their point of error on permissive entry, Houston Oil Co. of Texas v. Stepney, Tex.Civ.App., 187 S.W. 1078, 1080, by this court. In that case, as in the case at bar, the record title to the land in issue was in Judge D. R. Wingate, and the limitation claimants were his former slaves. But in that case Mr. Chief Justice Conley, writing the opinion, found as a fact "that neither Levi Levias nor Mary Levias, his wife [the limitation claimants and former slaves of Judge Wingate] nor Demp Stepney, knew that Judge Wingate ever owned or claimed any of the land in controversy." And he further found that the Wingate boys cut the timber from the land in controversy under a contract of purchase with the limitation claimants. The facts in the Stepney case clearly distinguished it from the case at bar.

■ Appellants assign error against the ruling of the court refusing to suppress the deposition of George Fuller. We do not discuss the merits of this assignment because in our judgment if Mr. Fuller's testimony were taken out of the record the ruling of the court in entering judgment would still have support. In this connection we overrule appellants' point that the testimony of Richard Farr and John Rutherford was insufficient to establish as a matter of law the issue of permissive entry in favor of appellees. Richard Farr testified to a conversation he heard when he was about twelve years old, and John Rutherford to a conversation he heard when he was about six years old. The memory of these witnesses as to these conversations was clear. The fact of their immature age at the time of the conversations does not destroy nor impair the weight of their testimony. They were not twelve and six year old witnesses testifying as to facts, but old men testifying as to things they heard when they were children, and we find no circumstance in the record tending to impeach their testimony. Their testimony, standing unimpeached, should be given the same weight as accorded by law to uncontradicted and unimpeached testimony generally.

It follows that the judgment of the lower court should be affirmed, and it is accordingly so ordered.

Affirmed.