**BROWN v. BICKFORD.**

No. 12149.

Court of Civil Appeals of Texas. San Antonio.

Feb. 14, 1951.

Rehearing Denied March 21, 1951.

Huson & Bissett, Refugio, Benckenstein, Wells & Duncan, Peter B. Wells, Beaumont, for appellant.

K. D. Hall, Refugio, Archer & Archer, and L. Hamilton Lowe, Austin, for appellee.

NORVELL, Justice.

This lawsuit involves 88 acres of land situated in Refugio County on the Guadalupe River near Hines Bay (a part of San Antonio Bay) close to the Gulf Coast. The general locality is referred to as Duncan's Point, a promontory extending into the bay and named after a family that owned the property for a number of years. For the most part it consists of a wilderness of brush land, not well suited to cultivation.

The appellee, Will Bickford, was admittedly a tenant of the Duncan family at one time. His claim to the small cultivated tract involved is based upon the ten-year statute of limitations, Article 5510, Vernon's Civil Stats. A jury sustained his claim of adverse possession and the controlling question in the case is whether or not there is any evidence to support the finding that Bickford's claim was one of such unequivocal notoriety as to charge the record title holder with notice thereof, in view of the fact that Bickford's entry into possession was in recognition of and under the title of the record owner.

In 1915, Bickford came to Duncan's Point as an employee of the Duncan Family and has resided there ever since. He farmed the tract of land now in dispute as a tenant of the Duncans, but it seems that about 1921 he ceased to pay rent thereon. The trial court in his charge to the jury treated Bickford as a tenant of the Duncans, holding under them and in recognition of their title.[1]

1. In his brief appellant argues that he was not a permissive tenant on June 1, 1926, and that he had repudiated his permissive tenancy under the Duncans prior to that time. The trial judge in effect instructed the jury that Bickford was a permissive tenant at least until June 1, 1926. In our opinion the evidence justified this instruction as a matter of law. Appellant requested an in-

In 1926, a mortgage against the Duncan property, which included the tract in litigation, was foreclosed and the property was purchased by the Victoria National Bank of Victoria, Texas. At that time, Mrs. M. E. Duncan, Miss Mary A. Duncan and Bickford resided in a single household on the premises and continued to reside there until 1942 when Mrs. Duncan died. Bickford at the time the suit was filed still lived in the Duncan house which adjoins the tract in dispute.

Shortly prior to 1940, Mrs. M. E. Duncan and Mary A. Duncan made application to the federal court for a discharge in bankruptcy and for an order setting aside to them a homestead tract. Negotiations were had with the Victoria Bank, which resulted in the bank's releasing to them all claims (except as to certain mineral interests) in and to a tract of 201 acres. Mrs. M. E. Duncan and Mary A. Duncan in turn released all claims to lands covered by the 1926 foreclosure sale other than the 201 acre homestead tract. This release covered the 88 acre tract now in dispute. In 1946, the Victoria Bank conveyed all the Duncan properties acquired by it to the appellant, H. L. Brown. The tract now claimed by Bickford was included in this conveyance.

■ It seems well settled that as Bickford was a permissive tenant of the Duncans prior to the 1926 foreclosure sale, he became the permissive tenant of the Victoria Bank after said sale. In Davis v. Morley, Tex.Civ.App., 169 S.W.2d 561, 567, it was said: "The record does not show any act performed or word spoken by appellant until this suit was filed which would constitute notice to appellee that her continued possession of the land after the judgment was rendered by the District Court of Yoakum County was adverse or in hostility to the rights of appellee. The law is well settled that the continued possession of land after a judgment of a court of competent jurisdiction has been rendered in which the possessor is divested of title and the title is vested in another is considered in subordination to the title so adjudicated. Appellant could not assert adverse possession after the decree against her without bringing express notice to appellee that her claim was adverse and hostile to that of the latter. Without such notice, her possession during the time intervening between the decree and the institution of the instant suit gave her no better right than she possessed before the decree was entered. Such notice not having been given, her possession was not adverse but was subordinate to the title of appellee. Root v. Woolworth, 150 U.S. 401, 14 S.Ct. 136, 37 L.Ed. 1123; Green v. Strubbe, 234 Ky. 380, 28 S.W.2d 469; Du Pont v. Charleston Bridge Co., 65 S.C. 524, 44 S.E. 86; Voight v. Mackle, 71 Tex. 78, 8 S.W. 623."

■■ When the bank acquired title to the land in 1926, it was justified in assuming that Bickford, the permissive tenant of the Duncans, remained in possession of the property in recognition of the title asserted by it as the successor in title to Bickford's former landlords. Before Bickford's possession could become adverse to the bank, notice of his hostile claim would have to be brought home to the bank. West Lumber Co. v. Sanders, Tex.Civ.App., 224 S.W. 828; Warren v. Haverkorn, Tex.Civ.App., 191 S.W.2d 793. The legal situation of one presently claiming adversely who had originally entered as a permissive tenant, is treated in the briefs (and we think rightly so) as being

struction that Bickford's possession could not be adverse until June 1, 1926, nor thereafter unless notice of such adverse possession was given to the record owner of the land. The court endorsed this request as follows: "In view of this request, special instruction with slight modification was written into court's charge, with addition of definition of notice." (See portion of charge set forth in latter part of this opinion.)

No request was made by either side for a submission of the question to the jury as to whether or not Bickford was a permissive tenant on June 1, 1926, and if it be considered that the evidence was sufficient to sustain a finding that he was not, the issue was determined contrary to appellee's contention by the trial court upon sufficient evidence. Wichita Falls & Oklahoma Ry. Co. v. Pepper, 134 Tex. 360, 135 S.W.2d 79.

similar to that of one who originally entered as a tenant in common and thereafter seeks to establish an adverse claim against his cotenants. In neither case will ordinary possession and use suffice, for such possession will be construed as that of a permissive tenant holding in recognition of the title of a landlord or, in case of a cotenant, in recognition of the title held by him in common with others. Notice of a change in the nature of the claim of possession must be given to those against whom it is asserted.

In the present case, there is no evidence that Bickford gave actual notice to the Victoria Bank that the nature of his claim or possession after 1926 differed in any way from that asserted by him as a permissive tenant of the Duncans. Appellee depended upon "constructive notice" and in accordance with such theory, in addition to the usual definitions given in connection with the limitation issue (i. e., peaceable possession, adverse possession, visible appropriation and claim of right), the court gave the following explanatory instruction, viz.:

"You are hereby instructed in connection with the Special Issue No. 1 (relating to the ten-year statute), that the possession of the defendant and cross-plaintiff Bickford could not be adverse until June 1, 1926 (the date of the foreclosure sale), nor thereafter until such notice of such adverse possession was given to the record owner of the land.

"By 'notice' is not necessarily meant actual notice of such adverse possession and claim, but such notice may be presumed by the jury to have been brought home to the record owner of the title if the jury find from a preponderance of the evidence that the adverse occupancy, if any, and claim of title, if any, on the part of the said Will Bickford was open, notorious, exclusive and unequivocal for such a length of time as to be inconsistent with the existence of title in such record owner, and of such notoriety as to constitute notice to the record owner and those under whom the record owner claims title of the adverse possession, if any, and claim of title, if any, of the said Will Bickford.

The inference of notice is one of fact to be determined by the jury."

The above instruction seems to be supported by a number of reported cases. The wording is practically identical with that employed in Vaughan v. Kiesling, Tex. Civ.App., 150 S.W.2d 435. See also, Moore v. Knight, 127 Tex. 610, 94 S.W.2d 1137; Leonard v. Cleburne Roller Mills Co., Tex.Com.App., 239 S.W. 605; Vidaurri v. Bruni, Tex.Civ.App., 154 S.W.2d 498, reversed in part, Bruni v. Vidaurri, 140 Tex. 138, 166 S.W.2d 81.

As above pointed out, possession which in ordinary cases would satisfy the statute is not sufficient in cases where the entry into possession was made as a tenant holding under the owner or as a tenant in common with others. In these cases where no actual notice of repudiation is shown the element of "unequivocal notoriety" sufficient to charge the owner with notice of repudiation must be present. In order to ascertain the sufficiency of the evidence upon the point it is necessary to examine certain reported cases and obtain the controlling principles applicable to the facts presented by the present record.

Appellee has cited a number of cases which he contends support his position that the evidence is sufficient to sustain his claim under the ten-year statute.

In Vaughan v. Kiesling, Tex.Civ.App., 150 S.W.2d 435, it appears that appellant, Vaughan, and appellees, Kiesling and Dixon, jointly purchased certain property in 1910. In 1911, through connivance with Kiesling and Dixon (according to a jury's finding), T. J. Collins the holder of a lien against the property foreclosed the same and the property was purchased by Kiesling and Dixon at an execution sale held in February of 1912. In 1940 Vaughan brought suit to establish his one-third interest in the property. It appears that Vaughan was absent from the State from about 1911 to 1922. However, upon his return, he made no investigation relative to the property although he knew it was subject to a vendor's lien when he acquired his interest in 1910. There were instruments on record which disclosed that

all interest he had in the property had been purportedly foreclosed, and yet he asserted no claim thereto until 1940, and after oil had been discovered on the property. In this case, deeds were of record showing a repudiation of the cotenancy and there was a record of approximately thirty years' nonclaimer on the part of the tenant out of possession. Under these circumstances the court held that the repudiation of cotenancy was of such unequivocal notoriety that Vaughan should be held chargeable with notice thereof.

In Moore v. Knight, 127 Tex. 610, 94 S.W.2d 1137, deeds of conveyance were placed of record, which showed a repudiation of the title of the cotenant out of possession. In addition to this, there was also a record of years of non-claimer by the tenant out of possession as well as evidence that those in possession refused to recognize the non-possessing claimants as members of a family holding undivided interests under a common ancestor. The Supreme Court held the evidence sufficient to support a finding of constructive notice of a repudiation of cotenancy by those in possession. This constructive notice was said to be similar to proof of notice by circumstantial evidence. The following was quoted with approval from Illg v. Garcia, 92 Tex. 251, 47 S.W. 717, 718: "Certainly, repudiation of the claim of a co-tenant, and notice thereof, may be shown by circumstances; and in cases like this, after all the parties are dead, the jury may infer such facts from long-continued possession under claim of exclusive ownership and nonassertion of claim by the other tenant."

In Rae v. Baker, Tex.Civ.App., 38 S.W.2d 366, 369, wr. ref., the evidence was held sufficient to support a finding of constructive notice of a repudiation of cotenancy. The opinion fairly sets out the circumstances in the record supporting this holding. The Court said: "The relationship of one cotenant to another is usually regarded in the nature of a trust, and notice of the hostile claim of one in possession against those out of possession, before it can be held to be adverse, must be brought to the knowledge of those affected. 11 Tex.Jur. 445, and numerous cases there cited. While there are expressions in some of the cases which might be construed to mean that nothing save actual notice would suffice, we do not so understand the rule. Mere possession, improvements, or payment of taxes in themselves are not sufficient to constitute constructive notice to cotenants of an adverse claim. But where the party in possession, as in this case, has been in open, notorious, adverse, and peaceable possession of said lands, making improvements thereon, paying taxes thereon, using and cultivating same, and openly claiming exclusive ownership thereof against the world for a period of twenty years, and for a period of seventeen years after the right of appellees to their possession accrued, and without knowledge or recognition of their outstanding claim, which was not asserted by them until 1929, we think his adverse possession and claim was of such 'unequivocal notoriety' as to conclusively constitute presumptive notice to appellees of its hostile character. Phillipson v. Flynn, 83 Tex. [580] 582, 19 S.W. [136]; Stiles v. Hawkins (Tex.Com.App.) 207 S.W. 89, 95; Liddell v. Gordon (Tex.Com.App.) 254 S.W. 1098, 1100. That being true, the trial court properly rendered judgment against the eight children of Sarah J. Baker on the limitation issue."

The evidence produced by Bickford does little more than show that he made use of the tract of land for farming purposes. Some four or five witnesses testified that Bickford in conversations with them had said that the tract of land belonged to him, or that he referred to it as his land. Cryer v. McGuire, 148 Ky. 100, 146 S.W. 402; Am.Cas.1913E, 485. It is however undisputed that there were no instruments of record which would indicate that Bickford was not continuing to hold as a permissive tenant or that he had repudiated his landlord's title. It was shown that although Bickford rendered other property in Refugio County for taxation, he never rendered the land now in dispute, nor did he pay any taxes thereon. The tax assessor-collector of the county testified that he had never heard of Bickford's supposed claim

to the property. There was no evidence of non-claimer on the part of the Victoria Bank or the appellant. On the contrary, the evidence shows that the bank claimed the land since 1926; that it leased the same for grazing purposes; that in 1940 it made a settlement with Mrs. M. E. Duncan and Miss Mary A. Duncan with reference to their homestead claims; that it caused surveys to be made of the land in connection with such settlement and eventually sold the land in 1946.

The burden of showing the repudiation of the permissive tenancy under which he entered rested upon Bickford. Although from time to time he saw various agents or representatives of the bank, he gave none of them actual notice of a repudiation, but relies solely upon "constructive notice," that is, proof by circumstantial evidence that the bank must have necessarily known that he had repudiated his permissive tenancy. We think it is one thing to rely upon "constructive notice" as against a nonclaiming owner whose residence is unknown or far removed from the land, and another thing to assert "constructive notice" of repudiation of a permissive tenancy against an owner easily accessible so that actual notice may be given to him. Here the record holder was known to Bickford. He knew the Victoria Bank was claiming the land and could easily have given notice of the repudiation of his permissive tenancy had he desired to claim adversely to the bank. Of course, it is readily inferable that had actual notice of repudiation been given, prompt legal action would have followed, but it is not the office of "constructive notice" to avoid the effects of actual notice, but rather to bring home to the true owner knowledge of the assertion of an adverse claim.

We hold, as a matter of law, that there is no evidence showing that the bank or the appellant had either actual or constructive notice of Bickford's repudiation of his permissive tenancy. In Warren v. Haverkorn, Tex.Civ.App., 191 S.W. 2d 793, 795, the Court said:

"Applicable to a prescriptive right by Pete Haverkorn ripening into a title by limitation, we may observe that he went into possession of the lots in 1929 by permission of Simms, even though we may assume from the record that Simms did not own the property. The universal rule is that a tenant may not make his possession adverse to his principal without repudiation of his tenancy, and such open and definite repudiation must be brought home to the knowledge of the one under whom the tenant holds. Eldridge v. Parish, 6 Tex.Civ.App. 35, 25 S.W. 49; Geries v. Magness, Tex.Civ.App., 31 S.W.2d 167; Flanagan v. Pearson, 61 Tex. 302; Hintze v. Krabbenschmidt, Tex.Civ.App., 44 S.W. 38; Emporia Lumber Co. v. Tucker, 103 Tex. 547, 131 S.W. 408; Gatlin v. Southwestern Settlement & Development Corp., Tex.Civ.App., 166 S.W.2d 150, writ refused, want of merit.

"We can see no difference between the rights of one holding as tenant of another and one holding with the permission of another, as did Haverkorn in the instant case, unless it be that the one claiming in a way to set limitations in motion would be required to repudiate his permissive right of possession to both, the one giving permission and the real owner, and if the owner be unknown make his claim so notorious that all persons, including the owner, are charged with notice of the hostile claim. Hardcastle v. Fitzgerald, Tex.Civ. App., 27 S.W.2d 302. * * *

"Adverse possession to ripen title by limitations 'is an actual and visible appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the claim of another.' Art. 5515, R.C.S. We have pointed out above that Pete Haverkorn is not shown to have ever claimed the lots in a way inconsistent with the manner in which he first took possession of them with Simms' permission."

We sustain appellant's first point and twelfth assignment of error. This makes unnecessary further discussion of other matters raised in the brief.

The judgment appealed from is reversed and judgment here rendered that appellee take nothing.

Reversed and rendered.