**Paul L. MEADERS, Appellant,**

v.

**Severo VASQUEZ, Appellee.**

No. 12817.

Court of Civil Appeals of Texas.

San Antonio.

April 13, 1955.

Rehearing Denied May 11, 1955.

Kelley, Looney, McLean & Littleton, Jackson Littleton, Edinburg, for appellant.

Henrichson, Bates & Hall, Edinburg, Luther Hughes, Weslaco, for appellee.

W. O. MURRAY, Chief Justice.

This is a suit in trespass to try title by Paul L. Meaders against Severo Vasquez for 100 acres of land lying and being situated in Hidalgo County, Texas, being a part of what was known as the San Pedro Ranch and fully described in the petition. The plaintiff established a record title to the 100 acres, and defendant relied upon his plea of title by adverse possession under the ten-year statute of limitation. Art. 5510, Vernon's Ann.Civ.Stats.

The trial was before the court and judgment was rendered that plaintiff take nothing, from which judgment Paul L. Meaders has prosecuted this appeal.

Upon request of appellant, the trial judge made the following findings of fact:

"1. I find that plaintiff is the record owner of the land herein sued for.

"2. I find that about 1917 the defendant, Vasquez, first entered upon the land in question. He entered as a caretaker of livestock belonging to a lessee, one Perkins. Vasquez has remained on the land from that date until the present time.

"3. In 1919 the property was deeded by one Manfull to D. T. Rounseville, and in 1921 D. T. Rounseville deeded the land to I. N. Rounseville.

"4. The deed to I. N. Rounseville, dated in 1921, was not placed of record until the year 1943. This deed to I. N. Rounseville recited that he was a resident of the State of Minnesota. In 1943, when I. N. Rounseville executed a deed of conveyance to the land, he recited in such later conveyance that his residence was the State of Iowa.

"5. During the year 1922 the defendant, Vasquez, entered into some character of oral contract with one Dolese to purchase the land. At such time Vasquez believed that Dolese was acting for R. J. Manfull, and a part, if not all, of the agreed consideration for the land was paid by Vasquez to Dolese. There is no showing that Dolese was acting for the said Manfull, or for the true owner of the land at such time, or that he had the authority to sell such land.

"6. Until the time of such purchase, or purported purchase by Vasquez, he had been on the land as a tenant and did not, prior to such date, claim to own the land.

"7. At all times subsequent to such transaction with Dolese in 1922, Vasquez claimed to be the owner of such tract of land.

"8. During the 27 years period from 1922, when Vasquez claimed to have purchased the land, until this suit was filed in 1943, Vasquez lived with his family upon the property, ran livestock thereon, and farmed a part of it. He assisted in placing a fence along one line of the property, dividing it from adjoining property. During such period of 27 years, with the exception of a few months at the beginning of such period, said property was enclosed by a fence. At times such fence fell into a state of disrepair. The time during which such fence was not sufficient to turn livestock is one of the controverted issues herein. Based upon all of the evidence before the Court, I find that there were no long, or

considerable periods of time when such fence was not sufficient to hold the defendant's livestock and keep out his neighbors' livestock.

"9. I find that the property here involved is a long, narrow strip of land extending back from the Rio. Grande River. The defendant made his home on the tract near the river, and during the time here involved various members of his family and kinspeople also lived in little houses situated on the land, near the Vasquez home. All of these people occupied the land with Vasquez' permission, and recognized him as the owner of the land.

"10. A cemetery existed on the land, and people desiring to bury their dead in such cemetery first obtained permission from Vasquez to use the same. Many people were buried in the cemetery subsequent to 1922, including the defendant, Vasquez' wife.

"11. I find that subsequent to 1922, people desiring to hunt upon such land first obtained the permission of the defendant, Vasquez, to do so.

"12. I find that if the said I. N. Rounseville, who held an unrecorded deed to said land from 1921 to 1943, had come upon said land at any time during the period from the year 1922 to 1943, he would have found that Vasquez was in possession of same, claiming to have purchased it from Dolese, and claiming it as his own, and would have found Vasquez farming the land, running livestock thereon, and making his home thereon.

"13. During such period from 1922 to 1943, I find no one claiming any rent from Vasquez, nor do I find that anyone challenged his possession or claim of ownership during such period.

"14. I find that at the time of the trial of this cause the defendant, Vasquez, was greatly advanced in years. I find that he was probably about ninety years of age. He was partially deaf and unable to speak English. I find that at times his testimony appeared to the Court to be rational and at other times the Court felt that his testimony carried little weight.

"15. I find that the possession of Vasquez was open and notorious and recognized by his neighbors who lived in the vicinity of the land, as well as people who came to see him on business.

"16. I find that he has not since 1922 abandoned his claim of ownership to the land."

Appellant requested further findings, and the trial judge made the following two additional findings of fact:

"1. That there is no showing that the said R. J. Manfull had any actual knowledge or notice of the contract of sale between the defendant, Vasquez, and one Dolese.

"2. The Court further finds that if the said R. J. Manfull or any other subsequent record owner of said property had gone upon said property subsequent to the date of such contract, they would have been informed by said defendant, Vasquez, of such sale transaction, and would have found him holding said land adversely to all other persons, including said Manfull or any subsequent record owner."

The best we are able to determine, this suit was filed in 1949, and when the court finds it was filed in 1943 he means 1949, otherwise the court would be in error in finding that appellee was in adverse possession for a period of twenty-seven years. A reading of these findings of fact will readily show that appellee entered upon the land in question as a permissive tenant of the record owner, and remained there for some 31 years when this suit was filed in 1949. Appellee contends that he purchased the 100 acres from one Dolese in 1921, whom he thought to be a representative of the then record owner, R. J. Manfull, and from and after that date appellee claimed the land as his own, hostile to the claim of any and all other persons. It is further apparent that the trial judge found that neither R. J. Manfull nor any of the other record owners of the 100 acres ever had any actual knowl-

edge of this claim which appellee was asserting. The trial judge made no finding as to whether the possession of appellee of the 100-acre tract was of such unequivocal notoriety that appellant and the other record owners would be presumed to have had notice thereof.

There is no evidence to support an implied finding that appellee's possession was of such unequivocal notoriety as to create the presumption that appellant and other record owners of the land had knowledge of the adverse claim of appellee. Practically everything that appellee did tending to show that he was in adverse possession of the land is set forth in finding of fact No. 8, and in additional finding No. 2. All of the things which appellee did would be consistent with the acts of a permissive tenant. There was very little change in his conduct after 1921, it was practically the same as it had been prior to that time. He helped to build a fence, he cultivated some of the land. He ran cattle on the land. There was a cemetery on the land and people came to him to get permission to bury their dead in this cemetery. To whom else could they have gone? The record owner lived in a distant state and appellee was in charge. The record indicates that people buried their dead in this cemetery before appellee claimed the land. Appellee could think of the name of only one man whom he had told he owned the land, although he said everybody knew he owned the land. He never paid the taxes on the land. He went to the court house one time and found that someone else was paying the taxes. It is true that I. N. Rounseville held a deed to this land from 1921 to 1943, which was unrecorded, and during that time he lived in a distant state. During this time the record

title was in D. T. Rounseville. It is also true that if appellee had desired to tell the holder of the paper title of his repudiation of permissive tenancy and of his hostile claim, it would have been difficult for him to have done so, but that does not change the situation. We are here considering whether his adverse possession was of such unequivocal notoriety as to create the presumption that the owner knew of the situation.

In the very recent case of Park v. Sweeten, Tex.Civ.App., 270 S.W.2d 687, Justice Norvell, speaking for this Court, gave a very thorough discussion of the question here involved. This case was affirmed by the Supreme Court in a very recent opinion, Sweeten v. Park, Tex., 276 S.W.2d 794. We see no point in repeating the very full discussion found in both of these opinions. See also Kidd v. Young, 144 Tex. 322, 190 S.W. 65; Brown v. Bickford, Tex.Civ.App., 237 S.W.2d 763.

The trial court having found that appellee entered upon the land as a permissive tenant and that he never gave notice to the owner or his vendees of his repudiation of such permissive tenancy, and there being no evidence of acts by appellee of such unequivocal notoriety as would put everyone, including the true owner, on notice of his repudiation of his permissive tenancy, the judgment of the trial court cannot be upheld.

Accordingly, the judgment of the trial court will be reversed and judgment here rendered that appellant recover the title and possession of the 100-acre tract in controversy.

Reversed and rendered.