W. P. MOORE ET AL. V. MRS. DORA KNIGHT ET AL.

No. 6656.   Decided June 3, 1936.
Rehearing overruled July 15, 1936.
(94 S. W., 2d Series, 1137.)

*James Young,* of Henderson, *McEntire, James & Clower, J. W. Timmins,* and *Thompson, Knight, Baker & Harris,* all of Dallas, *Jeff D. Farish, Otis Meredith, R. E. Seagler,* and *Robt. F. Higgins,* all of Houston, for plaintiffs in error.

Evidence of open, notorious, adverse and peaceable possession of land by one cotenant against the world for a period of twenty-five years after the right of another cotenant has accrued and without knowledge or recognition of the outstanding claim of the cotenant out of possession, raises as a matter of law the fact issue of limitation in favor of the cotenant in possession and against the cotenant out of possession. Matinez v. Bruni (Com. App.), 235 S. W., 549; Phillipson v. Flynn, 83 Texas, 582, 19 S. W., 580.

*A. V. Grant,* of Longview, and *Ocie Speer,* of Austin, for defendants in error.

There was no error committed by the Court of Civil Appeals in its holding that there was no evidence upon which title by limitation could be predicated on the 82 acre tract as the opposing parties to this litigation were cotenants and there was no proof of ouster or repudiation of title or notice of any title brought to these defendants in error. Puckett v. McDaniel, 28 S. W., 360; McBurney v. Knox (Com. App.), 273 S. W., 819; 11 Tex. Jur., 447-450.

MR. JUDGE GERMAN delivered the opinion of the Commission of Appeals, Section A.

This case involves the title to an undivided 1/24 interest in a tract of 207.5 acres of land and a tract of 82 acres, and an undivided 1/168 interest in a tract of 280 acres and a tract of 57.5 acres, all situated in Rusk County, Texas. These undivided interests are claimed by Mrs. Dora Knight and Mrs. Mamie Hart, who will be referred to herein as plaintiffs. Adverse claim is asserted by W. P. Moore and a large number of other persons, who will be designated defendants. The controlling question is one of adverse possession. As the facts are to some extent different, it will be necessary to state the facts concerning the 207.5 acres and 82 acres first and then the facts concerning the two other tracts.

The 207.5 acres was conveyed to Lawrence Day by deed dated November 7, 1873. The 82 acres was conveyed to Lawrence Day by deed dated December 18, 1875. For the purposes of this decision both of these tracts will be regarded as the community property of Lawrence Day and his wife, Georgia Day.

Georgia Day died in 1887, leaving six children who inherited her one half interest. One was a daughter, Emma, who married D. W. Oppenheimer. She died in 1897, without issue, and one half of her 1/12 interest passed by descent to her husband, D. W. Oppenheimer. He died November 29, 1910, leaving plaintiffs as his heirs, and they instituted this suit in 1931. Lawrence Day continued to live on the 207.5 acres from the date of the death of Georgia Lawrence until his death in February, 1910. This homestead tract and the 82 acre tract were entirely enclosed and were cultivated and used by Lawrence Day and members of his family until his death. In 1888 he was married a second time. After his death his widow lived upon the 207.5 acres for about eighteen months, and then married J. D. Florey. After her marriage to Florey she moved to Overton, Texas, and was residing there at the time of the trial. After Mrs. Florey left the Day homestead the 207.5 acre tract and the 82 acre tract were rented to W. P. Moore, and Moore used these lands continuously each and every year for farming and cattle raising—mostly farming—until 1930. During these years he paid one half of the rent to Mrs. Florey (the surviving widow of Lawrence Day) and the other one half was distributed among the children and grandchildren of Lawrence Day. No part of the rents was ever paid to plaintiffs. The Day children and grandchildren, through J. D. Florey,

paid all taxes on these lands for many years and the plaintiffs never paid any part of same. The Day heirs sold timber from these lands after the death of Lawrence Day and it was cut and removed. They kept up the fences and made some improvements on the land. Mrs. Florey testified that she and the Day heirs claimed all of these lands during all of the time from 1910 to the time of the trial, and they did not recognize the claims of plaintiffs. Moore testified that during these years he was holding and claiming these lands for Mrs. Florey and the Day heirs only, and did not recognize any claim of plaintiffs. It was proven by several witnesses that it was commonly known in the community that Moore had charge of these lands and was using and claiming same as tenants of the Day heirs. Mrs. W. P. Moore testified that shortly before Oppenheimer died she had a conversation with him in Hunt County, Texas, at which time she asked him if he had visited the Day family. Oppenheimer's reply was that he had not, and he added, "They don't recognize me and neither do I recognize them." At the time of the trial, Mrs. Hart was 46 years of age and Mrs. Knight was 44 years of age. They had never resided in Rusk County. The land had become valuable because of the discovery of oil just prior to the filing of the suit.

The 280 acre tract and the 57.5 acre tract were prior to 1870 the property of Simeon Florence and his first wife, Frances Florence. In 1870 Frances Florence died, leaving seven children, who inherited her one half interest in these tracts. One of these children was Georgia Florence, who married Lawrence Day. As shown above, Mrs. Day died in 1887, leaving six children, one of whom married Oppenheimer. Plaintiffs, as heirs of Oppenheimer, inherited a 1/168 interest in these two tracts of land, the descent having been cast upon Georgia Day in 1870, upon Oppenheimer in 1897, and upon themselves in 1910. Simeon Florence disposed of his interest in these lands by will to his children, most of whom died, leaving children, prior to his death in 1909. By the year 1912 these tracts had passed by inheritance to a large number of persons. Some of the Florence children were in actual possession of same and used and cultivated same for many years. During the year 1912 N. C. Guerin, who married Lizzie Florence, a daughter of Simeon and Frances Florence, acquired nine different deeds from the Florence heirs, and early in 1913 acquired another deed from some of these heirs. On December 14, 1907, N. C. Guerin and wife made conveyance to W. P. Moore of an undivided 173/196 interest in these two

tracts of land, amounting (as recited in the deed) to 297.8 acres. This deed was filed for record February 22, 1919. It is contended by defendants and not contested by plaintiffs that in arriving at the interest thus acquired by Moore from the Florence heirs the plaintiffs were not regarded as having any interest in these lands. In other words, that the aggregate interest and acreage thus acquired was figured on the basis that plaintiffs did not have any interest as heirs under Simeon and Frances Florence. On October 27, 1917, and on September 12, 1919, W. P. Moore acquired deeds from others of the Florence heirs. He testified that after the acquisition of these deeds he considered that he had purchased all of the 280 acres and 57.5 acres, except an undivided interest of $3\frac{1}{4}$ acres belonging to the Russ heirs, who were descendants of Simeon and Frances Florence, and that he claimed it all to the exclusion of plaintiffs. He testified in substance that prior to the time he bought the 57.5 acres it had been farmed; that he used it for pasture some and farmed it some, and rebuilt the fences and put them in substantial condition, but that the land was already under fence; that from 1917 down to the date of the trial it had been under a substantial fence and had been either farmed or pastured each and every year. That the 280 acre tract had a dwelling house on it at the time he bought it, and was under fence except a small corner of same; that said tract had been used by Mr. Guerin for several years before Guerin bought it in 1912; that after he (Moore) came into possession he farmed it and pastured it and reworked the fences and put them in good condition; that he kept the fences in good repair; that the dwelling house on it burned down and he built another about the year 1924, immediately after the old house burned, and that the new house was still on the land at the date of the trial; that he had farmed and pastured the 280 acre tract every year since he bought it and had accounted to no one for rents on it and that he claimed the 57.5 acre tract and the 280 acre tract during all the years except as to the small interest claimed by the Russ heirs; that he never accounted to Mrs. Knight and Mrs. Hart for any of the rents or revenues from the land; that he paid the taxes and that they had never offered to pay any part of same; that he knew D. W. Oppenheimer and saw him at Overton after the death of his wife; that he never recognized the Oppenheimer claim nor that of plaintiffs.

This testimony in most particulars was corroborated by other witnesses.

In response to special issues the jury found that defendants had held peaceable and adverse possession of each of these four tracts of land for five, ten and twenty-five years after plaintiffs' cause of action arose, and before the commencement of the suit. In addition, the jury answered the following special issue in the affirmative:

"Do you find from a preponderance of the evidence in this case that the plaintiffs knew that the heirs of Georgia Day, were claiming the property in controversy in this suit adverse to the plaintiffs, or that the heirs of Georgia Day asserted an adverse possession against the plaintiffs of such unequivocal notoriety that plaintiffs would be presumed to have notice of such adverse claim?"

The trial court defined peaceable and adverse possession in the statutory terms, and in addition submitted the following instruction as being applicable under the facts of this case:

"You are further instructed with the definition of the term 'adverse possession' as used in this charge, that in order to affect plaintiffs with an adverse holding, if any, by the defendants in this case, notice of such adverse holding, if any, on the part of the defendants must have been brought home to plaintiffs, either by information to that effect given to plaintiffs or their predecessor in title or by such acts of unequivocal notoriety in the assertion of such adverse and hostile claim, if any, that plaintiffs would be presumed to have notice of such adverse claim, if any."

The plaintiffs in the Court of Civil Appeals made no contention that this special instruction did not correctly define the law applicable to the question of adverse possession when asserted by one tenant in common against another. The gist of all their propositions in the Court of Civil Appeals was that the undisputed evidence shows, as a matter of law, that there never was any repudiation of the tenancy relationship by defendants. In other words, they contended that there was no evidence that plaintiffs had any notice of the assertion of an adverse claim by defendants to their interest in these lands. The Court of Civil Appeals reversed the judgment of the trial court in favor of defendants and rendered judgment in favor of plaintiffs. 65 S. W. (2d) 446.

■ The only question for decision is this: The adverse possession of defendants being indisputably sufficient to give title by limitation, were the acts of defendants in the assertion of their claim of such unequivocal notoriety, under all of the circumstances, that the jury might reasonably presume that plaintiffs

had notice of such adverse claim, and that it was hostile to their interest?

We think the finding of the jury was fully justified by the proof. It is hardly necessary to reiterate what has often been stated by the courts. It is not necessary that actual notice of an adverse holding and disseizin be brought home to a cotenant. Such notice may be constructive, and will be presumed to have been brought home to the cotenant when the adverse occupancy and claim of title is so long-continued, open, notorious, exclusive and inconsistent with the existence of title in others, except the occupant, that the law will raise the inference of notice to the cotenant out of possession; or the jury may rightfully presume such notice. In the case of Illg v. Garcia, 92 Texas, 251, 47 S. W., 717, the Supreme Court used this language:

"Certainly repudiation of the claim of a cotenant and notice thereof may be shown by circumstances, and in cases like this, after all the parties are dead, the jury may infer such facts from long continued possession under claim of exclusive ownership and nonassertion of claim by the other tenant."

There are many cases wherein findings of notice to a cotenant of adverse possession by another cotenant have been sustained under the circumstances of the cases. See Rae v. Baker, 38 S. W. (2d) 366; Williams v. Pure Oil Company, 49 S. W. (2d) 846, affirmed in 124 Texas, 341, 78 S. W. (2d) 929; Burton v. Thornton, 67 S. W. (2d) 891; Chestnut v. Casner, 42 S. W. (2d) 175 (writ ref.); Wallis v. Long, 75 S. W. (2d) 138 (writ ref.).

■ There are various circumstances in this case which we think justified the jury in inferring that notice was visited upon plaintiffs of the adverse claim of defendants. As to the 280 acres and 57.5 acres, there can hardly be any debate about the correctness of this statement. The deed by Guerin and wife to Moore in 1917, interpreted in the light of the family history of Simeon and Frances Florence, conveyed an acreage in excess of that owned by all of the previous grantors, unless plaintiff be excluded as having an interest. But, if they be regarded as having inherited no interest, then the acreage which the deeds purport to convey would correspond with the interest owned by the various grantors in deeds by the Florence heirs. Moore also asserted that after he acquired the other two deeds he considered that he owned all of these two tracts except the 3¼ acres claimed by the Russ heirs.

It is not necessary in the present case to hold that the con-

veyances by Moore were within themselves sufficient to constitute notice of the repudiation of the tenancy relationship, but the taking and recording of these deeds, in connection with all other circumstances in the case, was sufficient to sustain the finding of the jury that there was notice to plaintiffs of the adverse claim of defendant.

■ With reference to the 207.5 acres and the 82 acres, we think there are several circumstances from which the jury might reasonably conclude that there was notice of the hostile claim asserted by defendants. Long-continued possession and assertion of claim by one tenant with non-claim on the part of one out of possession has always been regarded as a strong circumstance tending to authorize an inference of notice of the adverse possession. In addition, we think the fact that defendants were not in blood relationship with plaintiffs was a circumstance to be considered by the jury. Those who by reason of blood relationships and long association sustain a close tie to the ancestral homestead are prone to oppose the claim of those who have inherited as strangers, by operation of law, and who have had no associations with reference to the homestead. It was shown that Emma Day married Oppenheimer against the wishes of Lawrence Day. Oppenheimer was entirely out of the line of descent, except by virtue of the statute. His daughters, after his death, were still further removed from the feeling of family ties and relationships. It was but natural that the Day heirs should have been inclined to deny their right to inheritance in the lands of Lawrence and Georgia Day. That this was their attitude is clearly evidenced by the statement attributed to Oppenheimer a short time before his death. We think the jury was entitled to give much probative force to that statement. It was as follows: "They do not recognize me, and neither do I recognize them." While we do not think this should be construed as a direct repudiation of plaintiffs' claim to an interest in the lands, yet we do think that it clearly shows that defendants did not recognize any inheritable relationship existing between them and Oppenheimer. This would tend to put him on notice that they did not recognize that he had any actual interest in these lands.

We therefore conclude that there was ample evidence to support the finding of the jury that defendants had held peaceable and adverse possession of each of these tracts of land for sufficient time to mature title in their favor against plaintiffs under the ten years statute of limitation.

■ As pointed out above, plaintiffs did not contend in the Court of Civil Appeals that the findings of the jury were against the great weight and preponderance of the testimony. They rather contended that the evidence, as a matter of law, failed to show notice to them of adverse claims. The action of the Court of Civil Appeals in reversing and rendering the judgment cannot, therefore, be construed as including the lesser finding that the evidence was insufficient to support the findings of the jury. This Court is, therefore, authorized to affirm the judgment of the trial court.

The Court of Civil Appeals affirmed the judgment of the trial court as to the 17.5 acre tract, but reversed and rendered as to all other tracts. In so far as the Court of Civil Appeals reversed the judgment as to the 207.5 acres, the 82 acres, the 280 acres and the 57.5 acres, its judgment is set aside, and the judgment of the district court is in all things affirmed.

Opinion adopted by the Supreme Court June 3, 1936.

Rehearing overruled July 15, 1936.