**HINDSMAN et al. v. WILLIS et al.**

No. 5211.

Court of Civil Appeals of Texas. Texarkana.

March 3, 1939.

Rehearing Denied March 16, 1939.

Newland, Cornett & Whitworth, of Linden, for appellants.

Carney & Carney, of Atlanta, and Wm. Hodges, of Texarkana, for appellees.

WILLIAMS, Justice.

Mesdames Roma Hindsman, C. E. Grunden, and L. N. Ballard, joined by their respective husbands, instituted suit on August 20, 1935, to recover a 5⁄16 undivided interest in a 127½–acre tract out of the Wilson Robinson survey in Cass County, Texas. Mrs. W. E. Thomas and husband seeking a recovery of a 1⁄16 interest, and W. R. Terry seeking a ⅓ life estate in a ⅛ interest, intervened on March 16, 1936. S. B. Willis and others were named as defendants. A settlement was reached as to a leasehold estate and to 30 acres known as the Thornton land. All defendants, except Willis and wife, were then dismissed and the cause proceeded to trial on the remaining 97½ acres. The pleadings of plaintiffs, adopted by intervenors, were in statutory form of trespass to try title. Plaintiffs in their pleadings, supported by affidavits, attacked a deed dated October 15, 1906, later herein set out, as being a forgery in that Mesdames Ballard, Grunden and Thomas and their respective husbands did not execute said deed. Defendant entered a general demurrer, general denial, plea of not guilty, and specially pleaded the five and ten years statutes of limitation. At the close of the evidence plaintiffs and intervenors moved for an instructed verdict for the interest sued for. To the refusal of the court to do so, plaintiffs and intervenors excepted. In response to special issues the jury found that the names of Mesdames Ballard, Grunden, and Thomas and their respective husbands appearing on the deed dated October 15, 1906, were forged; in favor of defendants upon five years and ten years statutes of limitation title to the 97½ acres; and further found that 73½ acres had been enclosed with fence. Plaintiffs and intervenors moved for judgment and for judgment non obstante veredicto. Defendant also moved for judgment. The court entered a judgment awarding plaintiffs and intervenors ⅜ undivided interest in 24 acres of the tract and denied them recovery in the 73½ acres which had been enclosed by a fence but made no disposition of a 5⁄8 interest in the 24 acres. To this action of the court plaintiffs, intervenors, and defendants, respectively, excepted, gave notice of appeal, and all litigants have perfected their appeals.

Mrs. Elizabeth Stone who conveyed the land to J. M. Crockett by deed in 1894 is the common source of title. This land became the community property of J. M. Crockett and wife, Easter, upon its purchase. To this union was born Cordia Grunden, Lenora Ballard, I. M. Crockett, and Henrietta Terry. Henrietta died prior to the death of her parents, leaving her husband, W. R. Terry, and two children, Willie Thomas and Roma Hindsman. Easter Crockett died intestate prior to 1906, and I. M. Crockett died in 1930. A conveyance purporting to be a warranty deed, bearing date of October 15, 1906, was filed for record November 10, 1910. Its granting clause reads: "That we, J. M. Crockett and L. N. Ballard and husband R. W. Ballard, C. E. Grunden and husband T. A. Grunden, W. R. Terry of the County of Cass, State of Texas, in consideration of the sum of Seventy Five ($75.00) Dollars to us in hand paid by I. M. Crockett, the receipt of which is hereby acknowledged, have granted, sold and conveyed, and by these presents do grant, sell and convey to the said I. M. Crockett of Cass County, Texas, all that certain tract or parcel of land situated in Cass County, Texas, as follows:" (Here is described the original tract of 127½ acres by metes and bounds.) This deed contains a warranty clause and purports to be signed by L. N. Ballard, G. W. Ballard, T. A. Grunden, C. E. Grunden, J. M. Crockett, B. F. Thomas, and W. E. Thomas. The acknowledgments of Mrs. Grunden and Mrs. Ballard were not in statutory form. B. F. and W. E. Thomas are not named in the granting clause. The deed does not purport to convey Mrs. Hindsman's interest. Terry is named as a grantor but did not execute the deed. It becomes unnecessary to discuss what interest, if any, was conveyed by these respective plaintiffs because of the irregularities appearing on the face of the deed. This is the deed which was attacked as a forgery. The finding of the jury that it was a forgery is not assailed. Mrs. Grunden, Mrs. Ballard, Mrs. Hindsman and Mrs. Thomas are entitled to recover jointly a 9⁄16 undivided interest, unless their inheritance of this interest is defeated by the five or ten years statute of limitation.

I. M. Crockett and R. P. Crockett, his wife, executed a deed bearing date of December 7, 1918, which purports to convey title to the entire tract to the defendant, S. B. Willis. Thus defendants deraign title under the deed into I. M. Crockett. Such deed found by the jury to be a forgery barred defendants from perfecting title under the five-year statute of limitation. Article 5509, R.C.S. of 1925; Olsen v. Grelle, Tex.Com.App., 228 S.W. 927; Adams v. Thompson, Tex.Civ.App., 95 S.W.2d 722.

Henrietta Terry, wife of W. R. Terry, having died prior to the death of her mother, Easter Crockett, this child's interest descended to her two children. Under these facts, W. R. Terry would not be entitled to a life estate in any part of the land.

We next consider the ten-year statute of limitation (Article 5510) urged by defendants as a bar to plaintiffs' recovery. Prior to Easter's death, plaintiffs had married and moved away, and since marriage have continuously lived in distant points. Easter's surviving husband, owner of ½ interest in the fee and homestead right in the whole, continued to reside upon the tract from her death until 1917 or 1918. I. M. Crockett who had inherited a ⅛ undivided interest together with his wife and father were living together and resided upon the tract at the time of the execution of the above-mentioned deed in 1906 into I. M. Crockett. They continued to occupy and cultivate same through the years until 1917 or 1918. If they did not reside upon the land in 1918, they lived close by and made a crop on it during 1918. Such occupancy by the father or son, or either of them during said period of time, being owners of an undivided interest, was that of cotenants. Their possession was not adverse to these plaintiffs, and no contention is made that their possession was adverse. On December 7, 1918, I. M. Crockett and wife executed and delivered to defendant a deed containing a general warranty clause and which on its face purported to convey to defendant the entire title to the tract in controversy. After execution of this deed, the father, son and his wife moved away. The father died in 1928. Defendant testified that he made no investigation about the title at the time he purchased; knew nothing about any infirmities and thought he was getting a good title. He further

testified that I. M. Crockett had traded with him for years. He knew I. M. Crockett to be a son of J. M. Crockett and that the two lived together upon the land in controversy. He knew J. M. Crockett's wife had died and left children, but was not acquainted with and never heard anything about these plaintiffs until this suit was filed. The deed of 1906 heretofore discussed was delivered to and used by defendant in preparing the field notes incorporated in the 1918 deed.

It becomes unnecessary to discuss what actual notice defendant may or may not have had as to any heirs to this property or what constructive notice of any infirmities in the title such deed visited upon defendant at the time he purchased. Regardless of such notice he took a deed which purported to convey the entire title for a recited cash consideration of $450. He was a stranger to the title and occupancy of the tract. The terms of this deed evidenced a clear intent on the part of I. M. Crockett to repudiate the cotenancy then existing and likewise defendant's intent to claim the entire interest adversely to the other cotenants (plaintiffs). This amounted to a repudiation of the cotenancy. Naylor v. Foster, 44 Tex.Civ. App. 599, 99 S.W. 114, cited with approval in Jones v. Siler, 129 Tex. 18, 100 S.W.2d 352.

Defendant claims that he entered into "exclusive possession" of the land under this deed and exclusively possessed same through a tenant for the period of ten years, and claimed the entire interest under the terms of said deed duly recorded in Deed Records of Cass County, Texas, during all of said period of possession. And he asserts that the recordation of the deed coupled with such possession amounted to constructive notice to plaintiffs of a repudiation of cotenancy so as to put into operation the running of the ten years statute of limitation (Article 5510 R.C.S.).

This record has presented a problem in ascertaining when the Crockett-Willis deed was filed for record and if and how recorded in the Deed Records of Cass County. The statement of facts does not disclose that a recordation of this deed in such records was ever introduced in evidence. Defendant offered in evidence the original deed which is copied in the statement of facts. This deed so copied does not disclose a certificate of the county clerk that it had been recorded in the Deed

Records of Cass County. Litigants agreed that the original deed or a photostatic copy may be used on the appeal, in lieu of the copy incorporated in the statement of facts, but such has not been filed in this appeal. Plaintiffs attached to their motion for new trial a certified copy of a Crockett-Willis deed recorded in Vol. J–4, page 497, Cass County Deed Records. The record does not disclose this deed or its recordation was introduced in evidence. The judgment entered describes the tract in controversy by metes and bounds and refers to the tract as "conveyed to the defendant S. B. Willis by I. M. Crockett et ux as of date December 7, 1918, and filed for record on the 17th day of August, 1935, and as shown of record in Vol. V–6 page 46, Deed Records of Cass County, Texas." This finding in the judgment was not excepted to nor has it been attacked by any assignment of error or proposition. Under this condition of the record, as a general rule, a finding in the judgment is presumed to be supported by the evidence. If this rule be disregarded, then the evidence introduced in this cause fails to show when and how such deed was recorded in the Deed Records of Cass County. If the recital in the judgment is to be relied upon, then the deed was filed in 1935. From either standpoint this record fails to show this deed was recorded in the Deed Records of Cass County at least ten years prior to the institution of this suit.

At the time of the execution of the deed by I. M. Crockett and wife, the farm, including the houses and rail fences, was in a delapidated and run-down condition. Testimony is to the effect that defendant did not cause any of the land to be cultivated in that it would not have been profitable on account of the run-down condition of the property. The houses and other improvements including the fencing, eventually rotted down. The cultivatable land continued to wash and grew up in timber and undergrowth. No one ever resided upon the land or cultivated any part of it after the Crockett family moved away in 1919. There is testimony that the defendant in 1923 sold $100 worth of sawlogs off the place. Either in the spring of 1925 or 1926, under an oral contract in which defendant furnished six spools of barbed wire and one Bill Hall furnished the labor. Hall erected some fencing on the land. Defendant is positive that the fencing was done in the spring of 1925. Hall is certain that it was built in the spring of 1925 or 1926, but believed it was in 1925. A south string of fencing was built through the woods across the southern portion of the tract. The evidence is silent whether this three-wire fence was tacked to trees or to posts. This fence connected with a fence on the east side of a tract of land owned by John Hall near his southeast corner. Then ran in a southeasterly direction to another enclosure, and turned in a northeasterly direction to connect up with a wire fence running north and south on Bill Hall's land. No fencing was built on this tract on the north or east lines. The fences which enclosed Bill Hall's land together with the fencing done on this tract by him formed one large pasture under one enclosure consisting of 73½ acres of the tract in controversy and Hall's land. Hall and a son pastured from fifteen to twenty head of stock in the enclosure each and every year. The record is silent if this stock was branded or marked. Hall agreed to pay defendant $40 a year for pasturage. He paid the first year rental. The testimony is not clear what rentals he has since paid. For eight years previous to the trial defendant has resided in West Texas and did not personally render the land for taxes. This land has been assessed to him for taxes on each year since 1919, and have been paid by him. Taxes for 1931, 1932, 1933, and 1935 were paid after becoming delinquent.

■ Regardless of whether or not the foregoing detailed use and occupancy of the land is sufficient to constitute adverse possession so as to ripen into a ten year limitation title, such use and possession standing alone would not start the statute of limitation to run against a cotenant until the cotenant received actual or constructive notice that an adverse claim to the entire interest was being asserted. Claim is not made that plaintiffs received actual notice of the repudiation. Proof of constructive notice by a recordation of the deed was not established. There are no other facts and circumstances surrounding the use and possession of the premises by defendant as discussed in Moore v. Knight, 127 Tex. 610, 94 S.W.2d 1137; Jones v. Siler, supra; Republic Production Co. v. Lee, Tex.Com.App., 121 S.W.2d 973, from which plaintiffs could be charged with constructive notice that defendant was adversely claiming the entire interest.

What we have said requires that the judgment of the trial court be reversed,

but on account of the uncertain condition of the record as heretofore indicated, we do not feel authorized to render judgment here for plaintiffs. Therefore the judgment will be reversed and remanded.

Appellee's motion for rehearing is granted and the judgment heretofore rendered is set aside, the former opinion is withdrawn and this opinion is substituted in lieu thereof.