544

**PAYNE et al. v. PRICE et al.**
No. 6261.

Court of Civil Appeals of Texas. Texarkana.
April 17, 1947.

Rehearing Denied May 1, 1947.

John D. Glass, of Tyler, for appellants.

Weeks, Hankerson & Surles and Ernest S. Goens, all of Tyler, Jones & Jones, of Mineola, and Turner, Rodgers & Winn, of Dallas, for appellees.

WILLIAMS, Justice.

Rice Price, Sr., the father, and Jane Price, his wife, acquired in 1873 as their community estate, which they used and occupied as a homestead until their respective deaths, a 116 acre tract of land out of the George Brewer Survey in Wood County. A road divided the farm into 50 acres on its west and 60 acres on the east. They both died intestate, the father in June, 1925, and the mother in 1892, leaving as heirs their six children. Arcie Price, a son, filed on October 24, 1940, for record

in the Wood County deed records a deed dated November 20, 1915, allegedly executed by the father, which purports to convey to Arcie the title in fee simple to the whole of the south 30 acres of the 50 acre part.

On November 10, 1941, Lula Price Payne, Rice Price, Jr., and Norma Watson, children of Rice Price, Sr., and his wife, joined by vendees of other children, appellants here, filed this trespass to try title action against Arcie Price and his wife, Mattie, for title and possession of the formers' alleged inherited interests in above 30 acres, in which they attacked the purported deed to Arcie with a verified non est factum plea. Arcie and his wife answered with a plea of not guilty and specially plead in bar the 10 years statute of limitation, art. 5510, R.C.S. of Texas. Jury findings Nos. 1 and 2 sustained the execution and delivery of the deed, and No. 3 sustained defendants' plea of limitation. The judgment entered denied plaintiffs a recovery.

The jury's affirmative answer to Special Issue No. 3 upon which a denial for a recovery of any inherited interest of plaintiffs must rest, and the instruction given in connection therewith reads:

"Question No. 3: Have Arcie Price and his wife Mattie Price had and held both peaceable and adverse possession, as those terms are defined in this charge, of the thirty acres of land involved in this case, for any continuous period of ten consecutive years before November 10, 1941, cultivating, using or enjoying the same, during such ten year period, if any?

"By 'adverse possession,' as that term is used, is meant an actual and visible appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the claim of another, and such as that the plaintiffs herein had either actual knowledge of such adverse claim by the defendants to the land involved, or that such adverse possession by the defendants was so open, notorious and unequivocal as would put a person of ordinary care and prudence, in the same situation as the plaintiffs herein were, and under the facts and circumstances in this case, upon notice that the defendants were claiming all title to the land as their own."

Plaintiffs assert that above finding of a 10 year limitation is as a matter of law without support in the evidence.

The home dwelling which was occupied by the parents was located in the north part of the 50 acres. Arcie brought Mattie, his bride, to this house where he resided with the father until he and his wife moved in 1902 to a tenant house situated in the south portion of the 50 acres. Within a few years thereafter, Arcie either tore down other tenant houses in the area or purchased new lumber with which he made the original one-room into a two-room and later into a four-room house. He and his wife claim, and it is supported by other evidence, that around 1915, when the purported deed was allegedly executed and delivered to Arcie, he fenced off and segregated the 30 acres by erecting a wire fence across its north line, connecting same with other fences which enclosed the 50 acres. Arcie and wife have remained and resided upon the 30 acres, cultivating parts thereof through the years since their entry in 1902, and there reared their children. He and his wife assert they have claimed the 30 acres as their own at all times since they secured the deed in 1915.

Since 1902, a period of approximately 38 years, his brothers and sisters have gone and returned to the home house. Lula, a sister, built a dwelling in the north part of the 50 acres after her marriage where she lived for years, later occupied by another sister. The home house was occupied by the father until his death and this house and the one built by Lula have been occupied continuously by members of the family of Rice Price, Sr., and was at the time this suit was filed. It appears that such patches which were fenced off for truck or gardens or for hog pens by his brothers and sisters, were located in the north part of the 50 acres. The live stock which was grown off and on through the years was kept on the west side, but the evidence is not clear as to the location of any pasture fence upon the 50 acres to turn stock. The tax rolls for 50 years or more show as-

sessments on 116 acres in the survey in the name of Rice Price, Sr., or his estate, for each consecutive year with the exception of the years '28, '29, '38, '39 and '40, when only 86 acres were assessed to the estate, and in 1933 and 1936 when no assessment of any kind was made against the estate. Taxes were assessed against Arcie on 30 acres in the survey for the years 1928 to 1940, both inclusive, and of these he paid 9 years' delinquent taxes in December, 1940. Prior to 1928 Arcie rendered only personal property for taxes. Nine years' delinquent taxes which had been assessed to the Rice Price estate were also paid in December, 1940.

█ It is to be observed that Arcie and wife went into occupancy of the 30 acres as a cotenant of his brothers and sisters and at the sufferance as well as the cotenant of his father. It is the settled law in Texas,—"In order for one cotenant to assert the running of the statute of limitation in his favor against his cotenant, there must not only be an exclusive occupancy of the property under an adverse claim, but notice of such hostile adverse claim must in some way be brought home to the other cotenant. His occupancy even of the whole of the property will be presumed to be in recognition of the common title unless and until notice of his adverse claim is brought either to the direct attention of his cotenant or unless his acts are of such unequivocal notoriety as that the other cotenant will be presumed to have notice of such adverse holding." Wiggins v. Holmes, Tex.Civ.App., 39 S.W.2d 162, 164, w/r.

█ Arcie and his wife make no claim in this appeal and made none in the trial that his brothers and sisters other than Rice Price, Jr., ever had any actual notice prior to October, 1940, that Arcie and wife had or were asserting any hostile claim or holding adversely to the inherited interests of the other children. If he exhibited the deed to Rice Price, Jr., along in 1926, as claimed by him and denied by Rice, Jr., and other evidence, and if it constituted actual notice of a repudiation of his cotenancy with the heirs of the mother, only Rice Price, Jr., was affected. In October, 1940, upon the prospective discovery of the Haw-

kins Oil Field, these brothers and sisters sold and executed various oil and gas leases and royalty interests to various parties. Arcie joined some of the heirs in one lease. In all these instruments a certain undivided interest in the 116 acre tract was described, as being conveyed. In one conveyance executed by Arcie and wife the interest was described as a $^{20}/_{116}$ interest in the Rice Price 116 acre tract. If credence be given to B. M. Land and John H. Ellis, the former tax collector of Hunt County, who, as agents, secured mineral interests for others, Arcie caused them to believe that each child owned a ⅙ undivided interest in the 116 acre tract and at no time asserted he owned separately the 30 acres.

It is to be pointed out that plaintiffs were clothed with no right of action for possession until the death of the father in June, 1925, the possession of Arcie up to that time being at the sufferance of the father. It is appellees' position that their exclusive possession and cultivation of the 30 acres continuously from June, 1925, to the filing of this suit in 1941, a period of 16 years; their tax assessments for the years 1928 to 1940, both inclusive, a period of 13 years; their segregation of the 30 acres from the remainder of the farm by the fence and the improvement on the house made some 26 to 35 years prior thereto were "acts of such unequivocal notoriety as that the other co-tenants will be presumed to have notice of such adverse holding." And in support of this position, appellees offered the testimony of various residents of the area to the effect that it was the general reputation in the community over a period of 20 to 35 years that the place where Arcie had lived through the years belonged to him; this reputation being based on his long continued occupancy.

█ This court does not feel warranted in holding that above facts and circumstances as urged by appellees are insufficient as a matter of law to support the finding implied in the affirmative finding to issue No. 3; namely, that such acts were of such unequivocal notoriety as that the other cotenants will be presumed to have had notice of a repudiation of the cotenan-

cy and adverse holding for some 10 year period subsequent to June, 1925.· Moore v. Knight, 127 Tex. 610, 94 S.W.2d 1137, and authorities there cited.

B. W. George testified that he was a partner with D. E. McMillan in the two oil leases dated October 22, 23, 1940, and forthwith filed for record which were executed by the heirs Payne and Briscoe to D. E. McMillan, as lessee, and which purport to cover certain undivided interests in the 116 acre tract. M. B. Land, an agent, had handled all negotiations and secured the leases in the name of D. E. McMillan. George was permitted to testify that at the time, he (George) paid off on the two leases, he then understood that Arcie was claiming the 30 acres, had it fenced and was farming and paying taxes on the 30 acres. In response to the next question propounded by defendants, the witness answered that Land gave him that information. Timely objections were urged to the admissibility of each, to the first that it was hearsay testimony; and to the latter, an attempt to impeach the testimony of B. M. Land with no predicate having been made. As a final result of the objections and arguments made, the court ruled, "I permit him to testify that he had information about that at the time he took the lease, and I don't think it would be material about where he got that information." George doesn't claim that Arcie told him anything. The record clearly discloses that George received his information from what Land, a third party told him. Such hearsay testimony was inadmissible under this record. Neither McMillan, George nor Land were parties to this suit. The two leases are not involved in and will not be affected by this litigation. If the evidence were offered to impeach the testimony of Land, as urged by appellees in their brief, it was inadmissible because no predicate was laid for that purpose and none is claimed. 45 Tex.Jur. (Witnesses) Sec. 282; McCormick and Ray, Law of Evidence, Sec. 341.

Land had theretofore testified in detail of the assistance furnished him by Arcie in obtaining above leases, of the information furnished as to heirship and of Arcie's representations that each of the heirs owned a ⅙ undivided interest in the 116 acre tract and made no claim that he owned individually a 30 acre tract. The witness Ellis had given similar testimony. The above and other testimony of like effect were denied by Arcie. George's testimony contradicted that given by Land. George's testimony related to a material, crucial and sharply contested question of fact, namely when did Arcie first assert a hostile claim to the inherited interests of his brothers and sisters in the 30 acres so as to start the 10 years' statute of limitation. To do justice, the admission of this testimony under all the facts in this record requires that this cause be reversed and remanded for a new trial.

If a judgment be entered grounded only upon the jury's findings Nos. 1 and 2, that Rice Price, Sr., executed and delivered the deed to Arcie Price it would not include the interests inherited through the mother, it being community property, and there being no pleadings for any equitable partition. If the evidence be substantially the same upon another trial, issues Nos. 1 and 3 should not assume that the deed was an ancient document in placing the burden of proof. The time when and if executed is sharply in issue.

The judgment which recognizes the validity of the oil and gas lease covering the 30 acres, and which recognizes and awards plaintiffs other than J. D. Glass the ⅟₆₀ interest in the tract, being recognized by the litigants, is affirmed. The judgment with respect to the disposition of the remaining ⁵⁹⁄₆₀ interest is reversed and the cause remanded.

### On Rehearing.

Our attention has been called to that portion of the trial court's judgment which decreed "that plaintiffs take nothing as against the other defendants." The motions of L. W. Pierce, Stanolind Oil & Gas Company, P. G. Lake, Trustee, J. Wood Glass and H. W. Reed, each of whom has pointed out the error in our original opinion (which we admit), are granted. The pleadings and evidence definitely sustain the judgment that plaintiffs take nothing as to those above enumerated. The concluding paragraph of the original opinion is

here withdrawn, and in lieu thereof, such paragraph shall read and it is here decreed:

The judgment which recognizes the validity of the oil and gas lease covering the 30 acres and which recognizes and awards plaintiffs other than J. D. Glass the $\frac{1}{60}$ interest in the tract, being recognized by the litigants, is affirmed. The judgment which denies plaintiffs any recovery in the mineral interests held by L. W. Pierce, Stanolind Oil & Gas Company, P. G. Lake, Trustee, J. Wood Glass and H. W. Reed is affirmed.

In all other respects the judgment is reversed and the cause remanded.

The motion of appellees, Arcie Price and wife, for rehearing is respectfully overruled.

Affirmed in part and reversed and remanded in part.