Hubert MORTON, Appellant,

v.

W. L. MORTON et al., Appellees.

No. 6854.

Court of Civil Appeals of Texas.

Texarkana.

Dec. 29, 1955.

Rehearing Denied Jan. 26, 1956.

Whitaker & Caston, Longview, for appellant.

Davis Bailey, Carthage, for appellees.

DAVIS, Justice.

Hubert Morton sued W. L. Morton, R. T. Morton, Homer Morton, Minnie Bell Brown and husband, Ben Brown, William Arthur Jones, Abner Crosby Jones, Annie Lizzie Bell and husband, W. H. Bell, and Jennie Mae Jones Morton, for title and possession of four tracts of land in Panola County containing 153½ acres, and for damages; and, in the alternative, for the partition and division of said four tracts of land.

The parties will be referred to as in the trial court.

Plaintiff alleged that he and the defendants Minnie Bell Morton Brown, Homer Morton, W. L. Morton and R. T. Morton were the sons and daughters of R. L. (Bob) Morton, deceased, and that the other defendants were claiming an interest in the land and the basis of their claim was unknown to plaintiff.

R. L. (Bob) Morton, deceased, hereinafter referred to as Mr. Morton, was married four times. His first marriage was December 17, 1891. Four children were born to the first marriage, two of whom died in infancy and without issue, leaving W. L. Morton and Homer Morton surviving. This marriage was dissolved by the death of Mrs. Morton; date not shown.

Mr. Morton next married Mrs. Macy Jones on June 6, 1906. Mrs. Jones had four children by her previous marriage, viz., William Arthur Jones; Abner Crosby Jones; Annie Lizzie Jones Bell, whose husband is W. H. Bell; and Jennie Mae Jones Morton, whose husband is W. L. Morton (step-brother). Two children were born to Mr. Morton and Mrs. Jones, viz.: R. T. Morton; and Minnie Bell Morton Brown, whose husband is Ben Brown. This marriage was dissolved by the death of Mrs. Jones Morton; date not shown.

Mr. Morton next married Mrs. Addie Leopard on November 16, 1920. One child, Hubert Morton, was born of this marriage. Mrs. Leopard had some children by a previous marriage but since this marriage was dissolved by divorce, and the property involved being purchased and presumably paid for before her marriage to Mr. Morton, the children by her previous marriage have no interest in the property.

Mr. Morton next married a Mrs. Blalock. The marriage was short lived and was dissolved by divorce; no children were born of this marriage. Neither the date of the marriage or divorce is shown.

Defendants filed a plea of not guilty, general denial and a special plea to the effect that plaintiff was not the son of Mr. Morton. They also pleaded the 2, 3, 4, 5 and 10 year statutes of limitation, Vernon's Ann. Civ.St. arts. 5507, 5509, 5510, 5526, 5529.

Trial was to a jury who, in response to three special issues submitted to them, answered that: (1) Plaintiff was the begotten son of Mr. Morton; (2) defendants had had peaceable and adverse possession of the lands, cultivating, using and enjoying the same, for a period of ten continuous years prior to April 1, 1954, the date plaintiff's suit was filed; and (3) plaintiff had suffered damages in the sum of $1,000 as the result of the sale of timber, for the sale of right-of-ways or easements, and rents from the premises.

After both plaintiff and defendant had rested, plaintiff filed a motion for an instructed verdict on the ground that no genuine issue of fact existed in the case for the jury to decide. The motion was overruled and after the jury verdict was returned, plaintiff filed a motion to disregard the jury findings to special issue No. 2, and enter judgment for plaintiff non obstante veredicto, because there was no evidence to support the jury's finding; and, in the alternative, that the evidence was insufficient to support its finding. The motion was overruled, and a motion for judgment by defendants that plaintiff take nothing was granted and judgment entered accordingly. Plaintiff's motion for new trial was overruled, hence the appeal.

█ Counsel for plaintiff signed the appeal bond without special leave of the court, in direct violation of Rule 142, Texas Rules of Civil Procedure. But, the defendants have made no objection to it and more than 30 days having passed, and Rules 430 and 431, Texas Rules of Civil Procedure, and authorities cited under each Rule, make liberal provisions for the correction of records on appeal. Defendants could not gain anything by filing a motion to dismiss the appeal now.

Plaintiff brings forward six points of error. By Points 1 and 6 he complains of the action of the trial court in overruling his motion for instructed verdict and motion for judgment non obstante veredicto; and by Points 2 and 3 he complains of the action of the trial court in entering judgment in favor of defendants on the answer of the jury to special issue No. 2 and contends that

there was no evidence to support the jury's verdict or that the evidence was insufficient to support the jury's verdict on special issue No. 2. By his 4th and 5th points he makes the same contention as made in his second and third points but in a different phraseology. The issues all being germane to the same general propositions, they will be disposed of as a group.

In view of the conclusion we have reached, we think a brief resume of the evidence will be sufficient.

Mr. Morton died December 1938. After his death Minnie Bell Morton Brown and her brother, W. L. Morton, lived on the old home place almost continuously, if not continuously, until and including the trial of this case. The only evidence in the record that shows that any notice was given plaintiff of the adverse claim by defendants is the testimony of Minnie Bell Morton Brown. There is a conflict as to the time she told plaintiff that she did not think he owned any interest in the land. At one place she said it was when plaintiff visited in her home prior to the death of her father. A letter written by her to plaintiff's sister in 1937, indicates that the statement, if made, was made prior to the death of Mr. Morton. If the statement was made at that time, it would be of no force or effect because Mr. Morton was still living and plaintiff did not have any interest in the land at that time. At another place in her testimony it appears that the statement might have been made about two years after the death of Mr. Morton while plaintiff was on a visit at her home. But the record fails to reveal but one visit in that vicinity of time by plaintiff and we are inclined to believe that the statement, if it was made, was made prior to the death of Mr. Morton.

There is no testimony in the record by anyone other than interested parties that the land involved was known as the property of defendants only, or that they knew of any adverse claim being asserted against him. There was oral testimony offered that the taxes had been paid but objection was made that the record would be the best evidence, the objection was sustained and the tax rec-

ord was never brought forward and offered to support that contention.

Some of the defendants testified that they were claiming the land adversely to plaintiff but that they had never told him that they were doing so.

There is evidence that about $600 worth of timber was sold by defendants three or four years after Mr. Morton's death, and that none of the money was given to plaintiff. There is evidence that an oil and gas lease was executed by defendants and filed for record November 15, 1944. The date of the lease is not shown and although it was offered in evidence, it was not brought forward in the statement of facts. Plaintiff did not know about any of this until about 1950.

As above stated, Minnie Bell Morton Brown and W. L. Morton resided at the home place almost if not continuously from the death of Mr. Morton until the trial. But, there are four tracts of land involved and there is no evidence to show that they are contiguous or enclosed under one fence. If the tracts are not contiguous, then the testimony only shows that the home place was used, occupied, and fenced during the period of time involved.

There is evidence that some of the defendants tried September 18, 1950, and later, to buy plaintiff's interest in the property. Part of this evidence is by a letter written to plaintiff by one of the defendants, Minnie Bell Morton Brown, on September 18, 1950, to which she signed her husband's name, and in which she not only wanted to buy her half-brother's interest, but offered to pay his bus fare back and forth if plaintiff's car was not in running order.

Special issue No. 2 of the court's charge reads as follows:

"Do you find from a preponderance of the evidence that the defendants and those under whom they claim in person or through tenant or tenants, or partly in person and partly through tenant or tenants, had peaceable and adverse possession, as hereinbefore defined, of the

lands in controversy, cultivating, using or enjoying the same, for any period of ten continuous years, or more, prior to the 1st day of April, 1954?

"Answer 'Yes' or 'No.'"

■ Plaintiff was born June 8, 1921. Limitation could not begin to run against him prior to June 8, 1942. Although the charge was not excepted to for that reason, it should have been limited to the period of time between June 8, 1942, and April 1, 1954. In passing upon the points of error, we must consider the evidence from the standpoint of limitation over that period of time.

We are unable to find anything in the record that would have a tendency to bring notice home to plaintiff of the adverse claim of the defendants more than 10 years prior to the filing of the suit. If the timber was sold four years after Mr. Morton's death, it was within the 10 years and notice of the sale of such timber was not given plaintiff until about 1950. If filing the oil and gas lease for record on November 15, 1944, was notice to plaintiff of the adverse claim of defendants, it was less than 10 years prior to the time suit was filed. There is very little evidence of farming and pasturing; only one cow was on any of the land at the time of the trial and the evidence does not show that she had access to all four of the tracts. The only current farming was a small watermelon patch which W. L. Morton had on the place at the time of the trial. There is no evidence of any rent having been paid by anyone to anyone.

There is considerable testimony by defendants as to what they thought and how they felt, but such testimony is of no probative force at all to establish title to real estate by limitation.

■ It is possible that a cotenant can mature title by limitation to property without visiting actual notice to the adverse cotenant of such adverse claim, Moore v. Knight, Tex.Com.App.1936, 127 Tex. 610, 94 S.W.2d 1137, but a reading of the evidence as outlined in that case, as well as in subsequent cases in which it is cited and followed, will clearly reveal that we have a different situation here. The time in that case was more than 25 years. As pointed out in Cliett v. Scott, D.C., 103 F.Supp. 440, and authorities therein cited, it is fundamental that a limitation claimant has a greater burden in showing adverse possession if the parties are tenants in common. Mere occupancy, without evidence of intention to appropriate the land will not support a claim of title under limitation. Harvey v. Peters, Tex.Civ.App., 227 S.W.2d 867, no writ history. A tenant in common cannot mature a title by limitation against his cotenant unless it clearly appears that the former has repudiated the title of the latter. Smith v. Dean, Tex.Civ.App., 240 S.W.2d 789, no writ history.

There is no evidence that the defendants did not recognize the interest of plaintiff at the time they entered into possession of the property involved. In the case of Doherty v. Jensen, Tex.Civ.App., 174 S.W.2d 77, 80, affirmed in part 143 Tex. 64, 183 S.W.2d 453, and in part reversed on other grounds, the court said:

"It is well settled in this state that, in order for a claimant to establish a title under the ten-year statute of limitations, he must have held the land claimed continuously for the prescribed period adversely to and in hostility against the true owner thereof. Satterwhite v. Rosser, 61 Tex. 166; Hartman v. Huntington, 11 Tex.Civ.App. 130, 32 S.W. 562."

See also Woodley v. Hughes, Tex.Civ.App., 252 S.W.2d 997, no writ history.

The evidence does not show whether the defendants entered upon the land in question with or without the consent of plaintiff. Under the state of the record it could readily be assumed that they entered without his consent. The court in Doherty v. Jensen, supra, further said:

"It is also well settled that when a party claiming the title to land by limitation has entered upon the land without knowledge or consent of the owner but, during the claimed limitation period, he acknowledged the title thereto to be in another, such acknowledgment of

itself will defeat such party's limitation claim to the land. Houston Oil Co. [of Tex.] v. Pullen, Tex.Com.App., 272 S.W. 439; Wier Lumber Co. v. Eaves, Tex.Com.App., 296 S.W. 481; Thompson v. Richardson, Tex.Com.App., 221 S.W. 952; Bruni v. Vidaurri [140 Tex. 138], 166 S.W.2d 81."

We think the offer of some of the defendants to purchase plaintiff's interest in the land as late as 1950 and afterwards was a recognition of his title in the land. The offers to purchase were clearly outright offers to purchase; not an attempt or effort to compromise, or to buy their peace.

■ In view of this state of the record we find the evidence is wholly insufficient to support the verdict of the jury to Special Issue No. 2, and all of plaintiff's points are sustained.

We have concluded that we are powerless to reverse and render this case because the evidence does not show the date the various tracts of land were actually purchased. There is some testimony that some of the land was bought during the first marriage of Mr. Morton. Four deeds were offered in evidence which apparently were the deeds to Mr. Morton covering the land involved. The offer shows each of the deeds to have been filed for record August 28, 1917. Nowhere is the date of the deed shown. The deeds were not brought forward in the statement of facts. These are matters that will have to be decided according to the dates the lands were purchased, together with the facts and the law peculiar to each tract.

■ In view of the necessity of another trial of this case, we will point out that the issue of the legitimacy of Hubert Morton cannot be challenged by defendants as a matter of law. The legitimacy of a child born to the wife and conceived during the existence of a marital relation cannot be challenged by either the husband or the wife. Lambert v. State, 124 Tex.Cr.R. 33, 60 S.W.2d 460; Meyer v. State, Tex.Cr. App., 41 S.W. 632; Hicks v. State, 97 Tex. Cr.R. 629, 263 S.W. 291; Jones v. State, 159 Tex.Cr.R. 18, 261 S.W.2d 324; Gonzalez v. Gonzalez, Tex.Civ.App., 177 S.W. 328, no writ history, and authorities cited therein. None of the testimony offered by the defendants tending to impeach the legitimacy of the plaintiff should have been admitted. All the evidence offered was based upon information furnished to them by their father. They being in privity with him, they are estopped to deny the legitimacy of plaintiff.

■ We further call attention to the fact that there is not sufficient evidence in the record, in its present state, to justify the submission of Special Issue No. 3. If plaintiff learned of the cutting of the timber in 1950 and did not attempt to do anything about it until 1954, his cause of action was barred by the two-year statute of limitation pleaded by defendants.

In calculating the period of limitation, the evidence shows that plaintiff was in the Merchant Marines and out of the state from early 1943 until December 7, 1954. His testimony is that he got a birth certificate shortly after he joined the Merchant Marines. The affidavits to his birth certificate are dated March 2, 1943, and the certificate of the county judge accepting the certificate for filing is dated April 18, 1943.

■ Plaintiff contends here that this period of time should have been taken into consideration in determining whether or not defendants had acquired title by limitation. He did not plead these facts in response to the plea of limitations by defendants and probably would have waived the defense if defendants had objected to the testimony at the time it was offered. In Wixom v. Bowers, Tex.Civ.App., 152 S.W.2d 896, 902, writ refused, w. o. m., the court said:

"It is the general rule in this state that when a defendant pleads limitation to a cause of action, it is incumbent upon the plaintiff to plead facts showing that he is within one of the exceptions to the statute. Lewis v. Saylors, Tex.Civ.App., 37 S.W.2d 760; Price v. Powell, Tex.Civ.App., 57 S.W.2d 1121; Smith v. Bradshaw, Tex.Civ.App., 93 S.W.2d 468; United States Royalty Ass'n v. Stiles, Tex.Civ.App., 131

S.W.2d 1060; Note, 115 A.L.R. 755, 766; 28 Tex.Jur. 294 et seq.

"Appellees specifically pled the various statutes of limitation in their second amended original answer as a bar to recovery by appellants. Since no pleas of disability of any kind tolling the statutes of limitation were set up by appellants, they cannot now avail themselves of these defenses."

If the plaintiff desires to claim the benefit of the period of time he was in the Merchant Marines and out of the state, we think it will be necessary that he plead such condition, especially so should defendants object to the testimony because there is no pleading to support it. Then, if the court fails to submit a charge based thereon, it will be necessary that he except to the charge and submit to the court a specially requested instruction, and specially requested issue on the same.

The latter comments are made for the purpose of expediting the disposition of this case.

For the errors hereinabove pointed out, the judgment of the trial court is reversed and the cause is remanded.